Eastern Dis.
July, 1841.

KENNER & CO'S
SYNDIC
vs.
HOLLIDAY ET AL.

---

## KENNER & CO'S SYNDIC vs. HOLLIDAY ET AL.

### APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

A third purchaser of an estate subject to certain mortgages, which she assumes to pay, cannot set up her claims in opposition to the mortgage creditor on said estate.

The creditors of an estate are not bound to give security to the purchaser before coming on him for their claims due by it, on the ground that he is in danger of eviction. The right to call on a party to give security implies a warranty against eviction.

A person contracting to pay the debt of another and receiving property out of which it was to be paid, cannot oppose the plea of usury or go into the consideration of that debt, and retain the means placed in his hands to pay it.

Usurious interest which has been paid cannot be recovered back.

Intervenors have no right to come in and contest the jurisdiction of the court in which the plaintiff had a right to sue. They must take the case as they find it, and if their interests are affected, it is the result of their own acts.

EASTERN DIS.
July, 1841.

KENNER & CO's
SYNDIC
vs.
HOLLIDAY ET AL.

This is an action to recover the sum of $64,306, from Mrs. Maria Holliday, widow of the late John R. Holliday, on account of a debt due by him in his life time, to the firm of Wm. Kenner & Co., and for which he gave his notes in 1826, secured by mortgage on a large sugar plantation and slaves. Since his death the defendant became the purchaser of said estate, subject to this debt and mortgage, and also assumed payment with certain conditions as to an extension of time.

The plaintiff, Richard Relf, sues as the sole syndic of the creditors of Kenner & Co., and prays judgment for the amount of the debt, and enforcement of the mortgage.

The defendant admitted the execution of the notes and mortgage, by her late husband, but denied her liability in the manner and for the amount claimed. She then sets up several matters in defence.

This suit was instituted in June, 1835, and put at issue in January, 1836, and in January, 1838, the defendant, Mrs. Holliday, amended her answer and also intervened as tutrix of her minor son, Daniel C. Holliday. The suit remained on the docket without being brought to a trial, until the 23d January, 1840, when Maria Davis, wife of W. R. Taylor, and Eliza Davis, wife of Minor Kenner, intervened, alleging they are daughters and the sole heirs of Wm. Davis, deceased, who was the first husband of the defendant, their mother. That their father died in the parish of West Feliciana in 1819, leaving considerable property, which was inventoried; and that in 1821 their mother intermarried with the late John R. Holliday, when they were minors, without the advice of a family council, and the property held by them and her in common was by authority of the Court of Probates on the 5th April, 1822, adjudicated to their said mother, duly authorized by her husband, at the estimative value thereof, and for which she gave a special

EASTERN DIS.
July, 1841.

KENNER & CO'S
SYNDIC
vs.
HOLLIDAY ET AL.
mortgage on 78 slaves; 59 of which belonged to herself, and 17 to her husband, John R. Holliday. That she bound herself in the said act of mortgage to pay them on their arriving at the age of majority, the sum of $29,614, with five per cent. interest thereon; this being the amount of the interest of their father in said estate.

They allege further that by the marriage of their mother without the consent of a family meeting, authorizing her to retain the tutorship of her minor children, that both her and her husband, John R. Holliday, became liable for the administration and eventual restitution of their property. They pray leave to intervene, alleging that they have a prior, special and legal mortgage to that of the plaintiff, or the Bank of Louisiana, also a creditor; and that the defendant be ordered to pay them out of the proceeds of the plantation and slaves purchased by her out of the estate of her deceased husband, John R. Holliday, by privilege and preference, the following sums, viz: to Mrs. Taylor, $18,911, with interest, &c.; and to Eliza Davis, wife of M. Kenner, $26,935 15, with interest, &c.

On these pleadings and issues the cause was tried. The case turned mainly on documentary evidence, exhibiting the respective claims, mortgages, and titles of the parties.

There was judgment for the plaintiff against the defendant, for $64,306 51, with eight per cent. interest, &c.; and that the proceeds of the mortgaged property sold, &c., be paid over to plaintiff, and that in case of deficiency of funds to satisfy this judgment, that the residue of the mortgaged property be seized and sold to pay the same. That there be judgment for the plaintiff in the matter of the intervention of Mrs. Holliday as tutrix of D. C. Holliday, dismissing it; and also against the intervenors, Mrs. Taylor and Mrs. Kenner; they paying the costs of their respective interventions.

The defendant and all the intervenors appealed.

*Eustis*, for the plaintiff and appellee.

*L. Janin*, for the appellants.

*Garland, J.* delivered the opinion of the court.

Eastern Dis.
*July,* 1841.

KENNER & CO'S
SYNDIC
*vs.*
HOLLIDAY ET AL.

Richard Relf, syndic of the creditors of the late firm of Wm. Kenner & Co., alleges that in June, 1826, John R. Holliday, now deceased, acknowledged himself indebted to said firm in the sum of $61,195 39, and to secure the payment thereof, he gave six promissory notes for the sum of $10,199 06½, payable at different periods of four, five and six years; and further to secure the payment of said notes, he executed a mortgage to said syndic or his successors, on a sugar plantation, the slaves and stock thereon, in the parish of Jefferson. That sometime in the year 1827, the said Holliday died, and at a public adjudication and sale of the effects composing his succession, ordered by the Court of Probates of the parish aforesaid, his widow, the present defendant, became the purchaser of said plantation, its dependencies and slaves, subject to the debt and mortgage aforesaid, which she specially assumed and contracted to pay to plaintiffs. It is further alleged said notes are to bear interest from the time due until paid, at the rate of eight per cent. per annum; that they are now due, for which a judgment is prayed and a sale of the mortgaged property.

The defendant denies being indebted in the manner and for the amount claimed. She admits her late husband signed the notes sued on, and avers that in the act of mortgage, she was made to renounce her just rights in favor of the plaintiffs, to her great injury and in violation of law.

She further avers the notes were given in part for an usurious consideration to the amount of $30,000.

It is also averred that she has renounced the community of acquests and gains, and that she is a mortgage creditor of the succession for $30,000, and is also the tutrix of her minor child, D. C. Holliday.

She further says, she is indebted to her daughters, Eliza and Maria Davis, for whom she is tutrix, a large sum, which in consequence of the conduct of plaintiffs she is unable to pay, that they have a legal mortgage on the property, which ought

EASTERN DIS.
July, 1841.

KENNER & CO'S
SYNDIC
vs.
HOLLIDAY ET AL.

to be admitted in preference to plaintiffs. She further answers that if the whole amount claimed by the plaintiff is allowed, the property of the succession will be insufficient to pay the mortgage debts, that the Probate Court has never established their amounts or order of privileges, and until a classification takes place the plaintiff has no right of action.

The defendant further alleges that in ignorance of her rights she has signed a renunciation of them, which is null and void, and asks relief in her own right and as tutrix, and prays to have paid back the sum of $13,000 paid plaintiffs by her.

By an amended answer the defendant avers the slaves mentioned in the petition, and mortgage, have, with a few exceptions, been taken from her by plaintiff and the Bank of Louisiana, and sold for their joint account.

Also that since the institution of this suit she has been disturbed in her possesion by the suit which Gaines and wife have instituted against her in the Circuit Court of the United States, to recover the land, which amounts to a disturbance.

That in consideration of the purchase of said land and slaves she engaged to pay $120,000 of the mortgage debts, but as those debts have never been classed she does not know who to pay, nor is she bound to pay any one until after the decision of the suit of Gaines and wife against her.

On the 23d of January, 1840, more than four years and six months after the commencement of this suit, Mrs. Taylor and Mrs. Kenner, the two daughters of Mrs. Holliday by her first husband, William Davis, presented their petition of intervention, alleging themselves to be the only heirs of their father. That their mother was their tutrix, and in 1822 contracted a marriage with John R. Holliday, without the consent or authorization of a family council. That shortly afterwards, their mother, duly authorized by her husband, applied to the Court of Probates of the parish of Feliciana to have adjudicated to her all the property left by their father, and partly held in common with your petitioners, which was granted and on the same day Mrs. Holliday and her husband gave a mortgage on sev-

Eastern Dis.
July, 1841.

KENNER & CO'S
SYNDIC
vs.
HOLLIDAY ET AL.

enty-eight slaves, fifty-nine belonging to herself and seventeen to John R. Holliday, to secure the rights of petitioners in the estate of their father, amounting to the sum of $29,614, which she bound herself to pay them, when they arrived at the age of majority, with five per cent. interest from the 5th of April, 1822.

They say that as their mother married Holliday without the assent of a family council, they both became liable to them *in solido*, and all the property of each became mortgaged to secure them in their rights. They further say, Holliday took possession of all the property adjudicated to their mother and mortgaged to them, and afterwards mortgaged a portion of the slaves to the Bank of Louisiana and to the plaintiff to secure them in certain debts, and that a number of the slaves have been sold to pay the debt to the Bank. They allege their superior mortgages on the property of Holliday and claim to be paid by preference out the fund for which the plantation sold. They allege they have brought a suit against their mother as their tutrix and obtained a judgment against her for the balances coming to each, which they pray may be paid to them by preference over the claim of the Syndic of Kenner & Co. They also wish to send the cause to the Court of Probates to have the debts classified and the funds distributed according to law.

The intricacy of these pleadings and the confusion thereby created, has thrown difficulties in our way, which a statement of the facts will in some measure simplify.

John R. Holliday married Mrs. Davis in the year 1822, who then had two children, the intervenors. The proceedings in relation to taking possession of the property left by their father, but a small portion of which was community, are substantially set forth in their petition. The family council that recommended the adjudication was in part composed of women and some of the other acts seem not to have been very regular; Mr. and Mrs. Holliday took possession of all the property, and the

EASTERN DIS.   slaves were removed to the plantation of the former on the Mis-
*July,* 1841.    sissippi in the parish of Jefferson.

KENNER & CO'S     On the 3d of November, 1825, Holliday being indebted to
SYNDIC
*vs.*        Kenner & Co., $120,664 14, to secure the payment thereof,
HOLLIDAY ET AL.  executed a mortgage on his sugar plantation and fifty-seven
slaves.  This debt was an actual balance owing of $80,188 40
and $40,475 74 of ultimate liabilities coming to maturity.

On the 13th of June, 1826, the syndic of Kenner & Co.,
(that firm having failed,) released the mortgage of the 3d of
November, 1825, and then Holliday and wife executed a mort-
gage to the Bank of Louisiana for $60,000, and another to the
syndics of Kenner, (on which this suit is brought,) for $61,-
194 39, payable in instalments of four, five and six years.
The mortgage in favor of the bank to have a preference over
the other.   The funds raised by the mortgage to the bank
were applied to the reduction of the mortgage in favor of Ken-
ner & Co., which was released and a final settlement took
place.   Shortly after this arrangement, Holliday died, leaving
one child by his last marriage and one by a previous marriage.
His estate being considered insolvent, his son by the first mar-
riage renounced his succession, his widow, (the defendant,) re-
nounced the community, and qualified as the tutrix of her mi-
nor child, Daniel C. Holliday; but never accepted or renounced
the community; it therefore stood as to him as accepted with the
benefit of inventory.  Samuel Livermore was appointed adminis-
trator of the succession, a meeting of creditors was held, at which
only three creditors, that is the Bank of Louisiana, the syndics
of Kenner & Co., and another were present.   It was agreed
to sell the plantation and slaves that were mortgaged in block;
the terms were, the purchaser was to assume and become spe-
cially liable to pay the mortgages to the bank and to the syn-
dics of Kenner & Co.; to pay $4,500 in ninety days and the
balance cash.   Upon these terms Mrs. Holliday, the defendant
became the purchaser ; the plantation and slaves were adjudi-
cated to her and in a notarial act made by Livermore as ad-
ministrator and accepted by her, she specially contracts to pay

the debts to the bank and the plaintiffs. The remainder of the EASTERN DIS.
estate, amounting to upwards of $10,000, was administered July, 1841.
by Livermore, he called on the creditors to present their claims KENNER & CO'S SYNDIC
which was done; he made a tableau of distribution, which vs.
showed a dividend of sixty-three per cent., whether it was ever HOLLIDAY ET AL.
homologated or not does not appear, but we hear nothing more
of his administration. At the meeting of creditors Mrs. Holli-
day did not appear to present any claim in her own behalf or
that of her minor children by the first or second husband. She
took possession of the property under the sale, made crops and
from the proceeds of them and the sale of a number of slaves,
some included in the mortgage and some not, she paid off the
mortgage to the bank and paid about $13,000 on that in favor
of plaintiffs, the balance not being paid this suit was commenc-
ed in 1835. In the year following Mrs. Taylor and Mrs.
Kenner, the heirs of Davis, commence their suit against their
mother to recover their portion of the estate of their father.
The petition and the answer are filed the same day, judgment
was rendered by consent, execution issued and seizure made
of the plantation on the same day, and a sale made by the
sheriff in ten days after. The succession of Holliday was in
no way represented in this proceeding, but the plaintiffs appear
to have consented to the sale, which produced on a credit
$151,900, their respective rights to which, is the matter in
litigation.

If the plaintiffs and the intervenors were the only parties en-
deavoring to get a portion of this sum, our task would be light,
as there is said to be enough to pay both, but an effort is made
to obtain a share for Mrs. Holliday, the defendant, and her
minor son, Daniel C. Holliday.

Mrs. Holliday by renouncing her interest in the community
of her last husband, John R. Holliday, put herself in the posi-
tion of a stranger to it, she was not responsible for any of its
obligations further than she had specially bound herself for
them, and could have asserted against it any claims she might
have. She was capable of contracting with the administrator,

EASTERN DIS. and did so.    She became the purchaser of the plantation and
July, 1841.
_____ slaves in which she had twice renounced her rights, first when
KENNER & CO'S she signed the mortgages, and again when she renounced the
SYNDIC
vs.          community after the death of Mr. Holliday.    The payment of
HOLLIDAY ET AL.
             the mortgages in favor of the Bank of Louisiana and the plain-
tiffs, together with $4,500 to the administrator in ninety days,
and any sum over in cash.    Upon these terms Mrs. Holliday
became the purchaser and accepted the sale.

The administrator was the vendor, she the vendee, and the
plaintiffs to be receivers of the price in consideration of their
promise to release their mortgage in payment of their debt.
Mrs. Holliday having specially assumed to pay this debt, and
having received a valuable consideration for her engagement,
cannot be permitted to oppose against the creditor a claim she
A third pur-  may have against the estate of her husband.    Suppose Mr.
chaser of an es- Holliday were now alive and the plaintiffs were pursuing him
tate subject to
certain mort- and her on the mortgage she could not interpose any claim she
gages, which
she assumes to might have against her husband between him and them, be-
pay, cannot set cause in their favor she had renounced all claims against him
up her claims
in opposition to that could be preferred to them.    How then can she now oppose
the    mortgage
creditor on said the payment of a claim which in addition to her previous re-
estate.
              nunciation in its favor, she has specially contracted to pay?

We recently held in the case of Arnous vs. Davern et al.,
18 La. Rep., 42, that where A contracted with B, to pay a
debt, which he owed C, and C sued A on his assumption, the
latter could not oppose any equities that might exist between
him and B to defeat a recovery by C.    The present case is
stronger than that.

As to demand for security on account of the alleged distur-
bance by the suit of Gaines and wife against Mrs. Holliday,
we can see no reason for it.    The syndics of Kenner & Co. are
not vendors, they do not sign the adjudication or join in the
notarial act of sale with Livermore, the administrator, nor is
there any contract of warranty on their part.    In the meeting
of creditors they stipulated for nothing more than what their
mortgage accords to them; they give no extension of time nor

do they consent to any thing further, than that the property be sold subject to their mortgage. The right to call on a party to give security rests upon the principle that there is an obligation of warranty, and we have yet to learn that the creditor of a deceased person, is bound to warrant the title of all the property sold at the sale of his succession, because the proceeds are applied to the payment of his debt. If the syndics of Kenner & Co. had have proceeded judicially on their mortgage and had the property sold under it, a contingency might arise, by which they might, perhaps be bound to warrant the title, but as they have not so proceeded, the contingency cannot arise and they are not bound. We are not disposed to give an extended construction to the article 2535 of the La. Code, as the operation of it may, and we believe will be, a source of constant litigation, without going beyond its obvious meaning. There is a clear distinction between this case and that of Dennis *vs.* Clague's syndics ; 7 Martin N. S., 93. There the syndics were the agents of the creditors and the vendors, but we cannot see how Livermore acting as the administrator of Holliday is to be made the agent of the creditors. He was the officer or agent authorized by law to settle the estate, pay the debts and give whatever balance might remain to the heirs. We do not think the syndic of the creditors of Kenner & Co. is bound to give any security to ¯indemnify the defendant against the claim of Gaines and wife.

In relation to the interest, it is only necessary to remark, that as the defendant is not entitled to security for the title, there is no cause for delaying the payment, and if there had been cause, the interest must still be paid in conformity with the principles laid down in the case of Ball's Heirs *vs.* Le Breton *et al*, decided a few days past, (ante p. 147.)

Upon a full examination of the plea of usury and the evidence in relation to it, we are of opinion it cannot avail the defendant. She contracted to pay the debt which Holliday owed plaintiff and received property to enable her to do so, she cannot enter into consideration of that debt, and by defeating it,

EASTERN DIS.
*July,* 1841.

KENNER & co's
SYNDIC
*vs.*
HOLLIDAY ET AL.

The creditors of an estate are not bound to give security to the purchaser before coming on him for their claims due by it, on the ground that he is in danger of eviction. The right to call on a party to give security implies a warranty against evidence.

A person contracting to pay the debt of another and receiving property out of which it was

EASTERN DIS.
July, 1841.

KENNER & CO's
SYNDIC
vs.
HOLLIDAY ET AL.

to be paid, cannot oppose the plea of usury or go into the consideration of that debt, and retain the means placed in his hands to pay it.

release herself and also keep the means put into her hands to pay it. But it is alleged it is the minor heir of John R. Holliday that contests it, and he has an interest in doing so, as if any balance of the estate is left after paying the debts, he is entitled to it. It is true he is interested, but a question may well arise, whether the tutrix can interpose a claim or debt owing to the minor, to protect herself from the payment of a personal obligation. She certainly cannot do it in compensation, or as a confusion, as the capacity in which she is bound, is altogether different from that in which she claims. But this question it is not material to discuss, as we are of opinion the parties are precluded from going into an examination of the alleged usurious consideration.

By reference to the original mortgage of November 3d, 1825, it will be seen that it was for $80,188 40, balance due Kenner & Co., and for $40,475 74 for acceptances and other liabilities coming to maturity. In June, 1826, the loan of $60,000 was obtained and appropriated, first, to the payment of the liabilities and acceptances, and secondly in discharge of the debt due Kenner & Co., by which it was reduced from $80,-188 40, to the sum of $61,194 39 for which the last mortgage to the syndic was given. The whole sum alleged to be usurious is less than $16,000, and the usurious interest all accrued previous to the execution of the first mortgage in November, 1825, and as about $20,000 were paid in the June following, the whole amount complained of as usurious, has been paid, and cannot be recovered back again. 2. La. Rep., 431; 4 La. Rep., 544; 8 La. Rep., 267.

Usurious interest which has been paid cannot be recovered back.

The remaining questions relate to the intervention of Mrs. Taylor and Mrs. Kenner; and the first is as to their prayer, that this cause be referred to the Probate Court, and the whole estate of John R. Holliday again examined into and settled, and their claims allowed. What might have been, or what may be the result of a proceeding to effect that object, if commenced by these intervenors against all the creditors and heirs of John R. Holliday, it is not necessary now to inquire; but it

is clear, the intervenors have no right to come in and contest the jurisdiction of the court, in which the plaintiff certainly had a right to sue the defendants. It was not indispensably necessary to the assertion or protection of their interests, that they should interfere in this suit; but as they have chosen to do so, they must take the cause as they find it, and if their interests are affected in consequence, it is the result of their own acts. The Code of Practice, articles 392, 393, 397, settle this question.

EASTERN DIS.
July, 1841.

KENNER & CO'S SYNDIC
vs.
HOLLIDAY ET AL.

Intervenors have no right to come in and contest the jurisdiction of the court in which the plaintiff had a right to sue. They must take the case as they find it, and if their interests are affected, it is the result of their own acts.

The intervenors say, they have a tacit mortgage on all the real estate of John R. Holliday, deceased, to secure the amount coming from the estate of their deceased father, William Davis; he having married their mother without the consent of a family council, whereby he became responsible *in solido* with her. This is no doubt true; Old Civil Code, p. 60, art. 10; La. Code, art. 272; and they have a right to follow the property in the hands of whosoever may have it in possession. They had a mortgage on the land and slaves which John R. Holliday owned at the time he executed the mortgage to plaintiff, and also on all the property owned by their mother, the defendant. She is as much bound, as Mr. Holliday was, and as she purchased all the property of her late husband, subject to this mortgage, it is responsible in her hands to the payment of the intervenor's debt. She is also liable to pay the debt due to plaintiff, so that as to her it is a matter of but little concern, who comes first upon the fund in controversy, as she has to make up the deficiency, if there should not be enough to satisfy both debts.

The counsel for Mrs. Holliday complains very much, because, as he says, the property which she had at the time of her second marriage, has been sold to pay her late husband's debts. This is not so. Mrs. Holliday sold the negroes herself, to pay for the property she now enjoys, which was bound for those debts, and she has no reason to complain, that the creditor wishes to be paid—now that she has realized a handsome competency by the operation.

EASTERN DIS.
July, 1841.

KENNER & CO'S
SYNDIC
vs.
HOLLIDAY ET AL.

But let us now see, how the case of the intervenors stands. They have no demand liquidated against the succession of John R. Holliday for any sum, nor have they any judgment against him. The judgment obtained against Mrs. Holliday as to third persons, has no binding effect, and we understand the plaintiffs as contesting it, both as to the sum allowed, and its regularity and binding operation. It is a judgment rendered by consent, disregarding all the legal delays and formalities, and however binding between the parties, has no effect against third persons. There is no doubt, the intervenors had a mortgage on the land sold under the execution issued on their judgment; and as they agree, their lien shall operate on the proceeds, we must give it effect; but as the amount for which they have a preference, is not fixed, we must remand the cause, to have it ascertained.

The judgment of the Commercial Court is therefore affirmed so far as it concerns the plaintiff and the defendant, Maria Holliday : but so far as it concerns the intervenors, Maria Taylor and Eliza Kenner, and the dismissal of their petition, it is ordered and decreed, that said judgment be reversed and said petition reinstated, and the cause remanded to the Commercial Court, for the purpose of ascertaining the amount due to each of the intervenors from the estate of William Davis, their deceased father, which amount when ascertained and liquidated, is to be paid out of the sum of $151,900, in preference to the syndics of the creditors of William Kenner & Co.: all the costs of this appeal, except those of the intervenors, to be paid by the defendant, and those of the intervenors to be paid by the plaintiff.