| Jan'y Term, | Calfee, adm'r, vs. Burgess. | 1869. |

# 𝕎𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## JAMES CALFEE, ADM'R, vs. HIRAM A. BURGESS.

### January Term, 1869.

1. The principle announced in the case of *Brown* vs. *Wylie*, 2 W. Va., that a note payable in the so-called Confederate treasury notes is illegal and void, cited and approved.

2. The consideration of a bond was stated to be "money loaned," to which the defense set up was that the consideration was Confederate treasury notes and therefore illegal and void, to which the plaintiff replied that the defendant was estopped by the bond from alleging any other consideration than that mentioned in it, and on demurrer to this replication the court below held the law to be for the plaintiff. HELD:.

> That a court ought not to lend itself to enforce a contract made in violation of law, nor allow a guilty party to effectuate his ends by pleading an estoppel to the truth of the case when the policy of the law forbids the transaction.

Daniel Shumate gave his bond, under seal, for 706 dollars and 15 cents, to Hiram A. Burgess, dated October 29th, 1862.  The consideration was stated to be for "money loaned." Shumate died and James Calfee qualified as his administrator.  Burgess brought suit in Raleigh county in 1866, against the administrator, to recover the amount of the bond.  The defendant, by special plea, sworn to, set up for defense that the consideration was Confederate treasury notes, and therefore illegal.  To this the plaintiff replied specially that the defendant's intestate said, in the writing obligatory, that the consideration was "loaned money," and that the defendant was estopped from asserting other consideration. To this replication the defendant demurred and the plaintiff joined, and the court overruled the demurrer, and the defendant withdrawing other defense the court gave judgment for the plaintiff for the amount of the debt.

The case came here on a writ of error and supersedeas awarded to the defendant.

*J. W. Davis* for the plaintiff in error.

The court erred in holding the replication good. *Brown* vs. *Wylie*, 2 West Va. Rep., 502.

"A recital in a mortgage, that it was made to secure a loan of money, estops the mortgagor from alleging that it was made without consideration. But when the contract is illegal, as against public policy, the court will not aid either party in enforcing it." *Norris* vs. *Norris*, 9 Dana, 318; *Brown* vs. *Wylie*, 2 West Va. Rep., 502.

No party can be estopped to show the illegality or immorality of a contract. It is an every day practice to plead that the bond was given for money won at gaming; else how would a party show the real transaction. An admission made by a party under seal can not afterwards be gainsayed or questioned by him, if the two parties are alone interested. But when public policy or morality has been invaded, the State has rights, and to protect her the party is permitted to show the truth. If the law were otherwise, I might employ my neighbor to shoot you and give him my bond, and in it say for loaned money, and it would be enforceable. A party is estopped to deny an admission only where the truth shown would operate a fraud. See *McGill's adm'r* vs. *Bumett*, 7 J. J. Marshall, 640; *Truwallis's adm'r* vs. *Riley*, 17 B Monroe, 399; *Marshall* vs. *B. & O. R. R.*, 16 Howard, 314; *Wood* vs. *McCann*, 6 Dana, 366. This last case is believed to be directly in point as it was debt on a sealed instrument. The loose manner of pleading in Kentucky will make it necessary for the court to read this case carefully.

It is believed the judgment of the circuit court should be reversed.

*C. A. Sperry* for the defendant in error.

The simple question involved in this case is this, is the defendant estopped by the bond from denying that it was money loaned to him?

The plaintiff sues upon a bond executed to him by Daniel Shumate, deceased. The defendant, the administrator,

pleaded that the consideration of the bond was Confederate money, to which plea the plaintiff replied specially that the defendant was estopped by the bond from saying or proving that he had not received money, having stated in his bond that the consideration was money loaned to him.

Lord Coke says that "estoppel is where a man is concluded by his own acts or acceptance to say the truth, and it may be by matter of record, of writing, or *in pais*." Coke Litt., 352 a.

If a distinct statement of a particular fact is made in the recital of a bond, or other instrument under seal, and a contract is made with reference to that recital, it is unquestionably true, that, as between the parties to that instrument, and in an action upon it, it is not competent for the party bound to deny the recital. *Carpenter* vs. *Butter*, 8 Meeson & Welsby Rep., 209; *Bowman* vs. *Taylor*, 2 Adolphus & Ellis, 278.

"A deed operates as a conclusive bar and prevents all inquiry into the truth." Chitty on Contracts, p. 6; 2 Blac. Com., 295; *Cutler* vs. *Dickinson*, 8 Pick., 386.

The defendant is estopped to deny what he has acknowledged in his bond. 10 Grat., 484; *Cecil* vs. *Early*, 10 Grat., 198; Stephens on Pleadings, 197; *Allen* vs. *Luckett*, 3 J. J. Marshall, 165; 1 Greenl. on Evidence, sections 22, 26.

The authorities in Kentucky, Virginia, United States courts, and elsewhere, hold that a party under his hand and seal is estopped to deny that statement, even though not in fact true.

The counsel for the appellant relies upon the well settled principle that in contracts which are contrary to public policy or morality the truth may be inquired into. Is this such a case? Receiving and paying out Confederate money within the Confederate lines was a necessity forced upon the people. It mattered not what their political views may have been, the food they ate, the clothes they wore, could be purchased with nothing else. It was the only circulating currency of the country. In the case of *Kepple* vs. *the Petersburg R. R. Co.*, Judge Chase said "that this currency (speaking of

Confederate currency) may fairly be said to have been impressed on the country by irresistible force. There was no other in which the current transactions of business could be carried on, and there could be no other while the rebel government kept control of the rebel States. The necessity for using the currency was almost the same as the necessity to live. * * * * * At the same time this currency, though it depreciated rapidly, had a sort of value." He decreed the payment of dividends in lawful money, the amount to correspond with the *value* of the Confederate money at the time. He rendered a similar decision in the case of *Butt, Byrne & Co.* vs. *Crensham.* In that case he instructed the jury that if they found Crensham liable as counsel, for money received, and that the money received was Confederate money, they should ascertain the gold value of the Confederate money at the time it was received and make that the measure of damages. Is the receiving and paying out of Confederate money inside of the Confederate lines so vicious and contrary to the morals of the people that a court ought to permit a party to deny what he has said in his bond? We think not. The bond was executed on the 29th day of October, 1862, at which time Confederate money was selling at nearly the price of gold.

BROWN, President. This is an action of debt on a note under seal, the consideration of which is stated on its face to be borrowed money.

The defence was, by special plea, sworn to, that the consideration was Confederate treasury notes, illegally issued by the so-called Confederacy for the purpose of carrying on, aiding and abetting in the late rebellion against the United States.

The replication was that the obligor in said note says "that the consideration thereof was loaned money, and that the defendant is estopped from asserting any other consideration."

To this replication the plaintiff demurred and the defendant joined in the demurrer, and upon consideration thereof,

278        COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,              Calfee, adm'r, vs. Burgess.              1869.

the court overruled the demurrer and gave judgment for the plaintiff for the debt.

Two questions arise for determination, viz : first, whether Confederate treasury notes (so-called) were a valid consideration ?   And second, whether, if bad, the obligor was estopped from setting it up by the terms of the note stating the consideration to be "loaned money."

In the case of *Brown* vs. *Wiley*, 2 W. Va., it was held that a note payable in the so-called Confederate paper was illegal and void, as being the life blood of the rebellion and an unlawful means to an unlawful end.

In the case of *Hale* vs. *Sharp*, 4 Cald. ,275, it was held that contracts founded upon or in consideration of Confederate treasury notes are not only illegal because *mala in se*, but because against public policy, and therefore void.

The same doctrine held in the cases of *Fain* vs. *Hedrick*, 4 Cald., 327; *Walker* vs. *Walker*, 4 Cald., 300; *Peltz* vs. *Long*, 40 Mo., 532; *Hunly* vs. *Scott*, 19 La., 161; *Windham* vs. *Cerf*, 19 La., 498.

This rebel currency is also condemned by the 14th amendment to the constitution of the United States, as against public policy.   Upon principle and authority then, I am of opinion that Confederate treasury notes, so-called, were illegal, and a contract based on such consideration was void.

In regard to the question whether the obligor was estopped from pleading and proving that such was the consideration of the note sued on, instead of the consideration stated in the note, the case of *Wilson* vs. *Spencer*, 1 Rand., 76, furnishes an example in point.   That was an action of debt on a note under seal.   The defence was, by special plea, that the note was given to the president of an unchartered bank, established contrary to law, and that the consideration of the note was bank notes emitted by said bank in violation of law.

The plaintiff demurred to the plea and the defendant joined in the demurrer.

The county court gave judgment for the plaintiff, which judgment, upon appeal to the superior court, was affirmed.

But upon the appeal to the court of appeals, the judgment was reversed and judgment entered for the plaintiff, by the unanimous opinion of the court.

The defence in the case at bar, then, was of matter which might certainly have been set up to an action on simple contract, and under the provision of the statute might be pleaded in this case to a sealed instrument as within the equity of the act.

By the common law if the consideration be repugnant to justice or morality, or is contrary to the policy of the common law, it will fail to support a contract. Addison on Contracts, 23; Smith & Smith's Com.; 3 Leon. 88; *Norris vs. Norris*, 9 Dana, 318.

On principle and authority, therefore, it would seem proper that a court should not lend itself to enforce a contract made in violation of law, nor allow a guilty party to effectuate his ends by pleading an estoppel to the truth of the case where the policy of the law forbids the transaction.

Where parties are *in pari delicto* neither is entitled to the aid of the court; but a distinction has been taken in the case of usury, and the debtor relieved against his usurious contract upon the ground that the borrower is slave to the lender, and not, therefore, *in pari delicto*, as well as upon the ground of public policy.

Both principles equally apply in this case, because the consideration is money borrowed, whether that be in lawful money or Confederate treasury notes.

I think, therefore, that the plea in this case was a good defence to the action; that the replication to it was of matter immaterial and therefore bad, and the demurrer to the replication ought to have been sustained and judgment rendered for the defendant.

I am of opinion, therefore, to reverse the judgment of the court below and enter judgment for the defendant, with costs in both courts.

The remaining judges concurred.

JUDGMENT REVERSED.