# CHARLESTON.

## LANHAM v. MEADOWS.

Submitted September 12, 1912.    Decided June 17, 1913.

1. CONTRACTS—*Action on Contract—Illegality—Evidence.*
   If a party to an illegal agreement, by proof of part of the facts constituting the transaction out of which it grew, make a *prima facie* case for recovery against the other party, without disclosing the illegality, the defendant's guilty participation in the transaction does not preclude him from proving as matter of defense the illegal part of the contract. (p. 611).

2. GIFTS—*Gifts Inter Vivos.*
   A promissory note may be the subject of a gift *inter vivos* from the promissee to the promissor. Surrender of the note with intent to forgive the debt is a sufficient delivery. (p. 614).

3. APPEAL AND ERROR—*Review—Sufficiency of Evidence.*
   A verdict founded upon conflicting oral testimony cannot be set aside by the court. (p. 614).

(MILLER, JUDGE, absent.)

Error to Circuit Court, Braxton County.

Action by Charles Lanham against Eva I. Meadows. Judgment for defenlant, and plaintiff brings error.

*Affirmed.*

*Charles G. Coffman,* for plaintiff in error.

*C. F. Greene, Morrison & Rider,* and *Hall Bros.,* for defendant in error.

POFFENBARGER, PRESIDENT:

In this case, the jury denied by its verdict right in the plaintiff to recover any portion of the demands stated in his declara-

tion and bill of particulars, amounting to nearly five thousand dollars, consisting of three promissory notes and numerous sums of money alleged to have been paid out by him for her at her request.

Under the general issue raised by her plea of *non assumpsit,* the defendant adduced evidence tending to prove a long period of illicit sexual intercourse between her and the plaintiff, induced on her part by the advancement and payment of the money demanded in the declaration, and, in connection with her testimony, introduced a formal agreement for such intercourse and relation, acknowledging the receipt, prior to the date thereof on account of the same, of the sum of $2,000.00. The plaintiff denied the execution of this contract an dobjected to its introduction. On this branch of the case, he supplemented his own testimony by that of five expert witnesses who expressed the opinion that the signature was not in his handwriting. Other papers, bearing his signature, and put in evidence, were before the jury for comparison. Two of the notes sued on, one for $600.00 and another for $340.00, bear date prior to that of the agreement. With very few exceptions, the defendant admits the advancements of money to her and payment of money in discharge of her debts and obligations. She also claims the plaintiff had surrendered to her the three notes specified in the bill of particulars, including the two just described. She does not claim, in her testimony, to have paid any of these notes or the money delivered to her or paid out by the plaintiff in discharge of her debts and obligations, but she nevertheless produced a receipt for the sum of $1,000.00, bearing date June 12, 1906, and declaring said sum to be in full of account up to that date.

The formal assignments of error go to the admission of defendant's testimony to her immoral conduct and relations with the plaintiff and the alleged contract or agreement for sexual intercourse between them, and the overruling of the motion to set aside the verdict.

Having shown an apparently valid debt by the introduction of the notes of the defendant and proof of payment of indebtedness for her and at her request, the plaintiff denies the right of the defendant to set up her own immoral and illegal relation with him as a consideration for the moneys paid to her and for her, on grounds of public policy. This position is untenable.

The consideration for the payment of the money is part and parcel of the transaction, and if it could not be given in evidence to defeat the action, money paid upon an illegal consideration could always be recovered back, in violation of that principle of public policy which forbids it. In order to evade this principle of law, it would only be necessary to prove one side of the contract. That illegality of the consideration may be set up as a defense to a debt *prima facie* valid is well settled by authority. *Calfee* v. *Burgess,* 3 W. Va. 279; *Silfer* v. *Howell,* 9 W. Va. 391; *Hope* v. *Park Association,* 5 N. J. L. 627; *Embrey* v. *Jemsion,* 131 U. S. 336; *McMullen* v. *Hoffman,* 174 U. S. 639.

If the court were at liberty to deal with the case as jurors, a conclusion might be reached different from that of the verdict, but the law accords to the jury its province which cannot be invaded by the court. As to the relation between the parties, the evidence consists almost wholly of their oral testimony, and it is directly and positively conflicting. There are circumstances tending to sustain the testimony of each of them. Correspondence introduced shows a relation of close intimacy and it is not denied by the plaintiff. They differ only as to the issue of illicit intercourse. The defendant charges it and the plaintiff denies it. The latter delivered to the former money and paid notes, bills and other demands for her, throughout a period of time extending from May 1, 1901, to June 1908, and possibly later. The financial transactions between them began in Harrison county at a place called Marshville, where the defendant was then conducting a small grocery store and at or near which the plaintiff resided. Having obtained considerable money from him for the purpose, and, as she says, at his suggestion, she purchased with it a small tract of land somewhere in Braxton County, on which she built a house. Later, she and her husband and family removed to Braxton county and the plaintiff occasionally visited her at that place. In the house so built, a room was provided especially for him. On one of his periodical visits to that place in September, 1909, the defendant and her husband claim the latter entrapped and caught him in the act of having sexual intercourse with the wife. He admits his presence there and an altercation or controversy between him on the one side and the husband and wife on the other, but denies the improper conduct attributed to him. According to his testi-

mony, this transaction was an effort on the part of the defendant and her husband to extort money from him on a false charge or accusation. He went home' a day or two after this occurrence, and the husband of the defendant at a later date approached him near his home and attempted to have an interview with him.    As to what then occurred between them, their testimony is conflicting, the plaintiff saying there was a renewed demand for money and the husband denying it.   On leaving the Meadows home, the plaintiff failed to take with him his trunk which was later sent to him.   In·it, he says, were the three notes mentioned in the bill of particulars and put in evidence.   The defendant insists he had delivered over to her all of the notes she had execcuted to him, but that they had been left where he could have found them, without intent that he should again re-possess them, and he must have taken them clandestinely and without her consent.   How they got back into his possession, she is unable to say.   The plaintiff denies not only· the conduct with which he is charged, but also his ability to engage in sexual intercourse. He was about 70 years old when his relations with the defendant began and had had a severe stroke of paralysis in the year 1886. He suffered another attack of the disease in 1906.   At the date of his last visit to the Meadows home and the alleged discovery of his immoral relations by the husband, he was about 78 years old.   The immoral written contract was put in evidence as an admission of his illicit relations with the defendant, and the evidence of five witnesses was adduced to prove that the signature thereto was not in his handwriting.   One of these was familiar with his handwriting and the others testified merely as experts. All were of the opinion that the signature was not in his handwriting.   The jury had before them numerous checks, receipts and letters, for purposes of comparison, and the expert witnesses were unable to show any very marked difference between the signature to the contract and the genuine signatures upon other papers.   To set forth here, in addition to these salient facts and circumstances, the minute details of the testimony, would subserve no good purpose.

The vital question in issue depends, as has been stated, upon the credibility of two witnesses.   The admitted facts and circumstances have no controlling probative force or effect.   A long period of intimacy is admitted as well as proven.   On the ques-

tion of its character, its purpose and incidents, the record discloses nothing, but their oral testimony and the controverted written admission. As to the latter, there is nothing decisive in the evidence. In the opinion of five men, the signature to that paper was a forgery, but the jury, consisting of twelve men, compared it with numerous genuine signatures of the plaintiff and were of the opinion that it was genuine. On the evidence as disclosed by the record, its genuineness or spuriousness was largely a matter of opinion. A verdict thus dependent upon conflicting oral testimony cannot be disturbed by the court. *Coalmer* v. *Barrett,* 61 W. Va. 237; *Fulton* v. *Crosby-Beckley Co.,* 57 W. Va. 91.

As two of the notes sued on bear dates prior to that on which the defendant says the immoral relation between them began and the date of the alleged contract for such relation, and the defendant admits the receipt of the money evidenced by them, it is said the illegal consideration could not have entered into them. This position is well sustained by law. A valid debt cannot be invalidated by proof of a subsequent, separate and distinct illegal transaction between the parties. But this is not conclusive of the issue as to these notes. The defendant swears positively that the money was given to her without any expectation of its repayment, and that the notes were executed and delivered as a mere pretense of indebtedness, to the end that their relation might be shielded from discovery by members of plaintiff's family. Another legal principle, that a written instrument cannot be contradicted by parol testimony, would sustain plaintiff's claim against this theory of defense, but the record discloses an additional fact, in avoidance of the application of this legal rule, if the defendant's testimony is to be taken as true, a question for jury determination, namely, that these notes were bestowed upon the defendant as gifts. She swears positively that they were delivered up to her as gifts and then subsequently abstracted from her possession by the plaintiff. A gift of a chose in action can be made in that way. A creditor can forgive a debt by way of gift, by delivery to the debtor of the evidence thereof. *Beach* v. *Endress,* 51 Barb. 570; *Hathaway* v. *Lynn,* 75 Wis. 186; *Larkin* v. *Hardenbrook,* 90 N. Y. 333, 43 Am. St. Rep. 176; *Albert* v. *Zeigler,* 29 Pa. 50. Taken in connection with all the circumstances attending the transactions between

the parties and bearing upon the motive of the plaintiff, the testimony of the defendant to the gift of these notes is sufficient to sustain the jury's finding as to the intent with which they were delivered to her. His possession of them is a circumstance raising a presumption against donation, but this presumption is rebutted by her testimony, if the jury believed it, as they could and did.

Upon these principles and conclusions, the judgment will be affirmed.

*Affirmed.*