DICKINSON *v.* PERE MARQUETTE RAILROAD CO.

1. Evidence—Opinions—Admissibility—Harmless Error.
  Where the measure of damages had been stated in the presence of the jury to be the deterioration of the value of plaintiffs' farm by reason of the negligent acts of defendant, and there is no doubt that the court, witnesses, and counsel all understood that this was precisely what the witnesses were attempting to state when they gave their opinions as to the amount of damages resulting from the washing and caving away of plaintiffs' land, a motion to strike out the testimony, made after plaintiffs' case was closed, and their witnesses departed, was properly overruled, though the form of the questions propounded was objectionable, if timely objection had been made.

2. ACTIONS—JOINDER—GROUND FOR NEW TRIAL.
> The joinder of several demands for different torts, and attempted recovery on them in good faith in a single action, is not ground for a new trial, on the theory that the presentation of demands on which no recovery could be had resulted in prejudicing the jury and in an unjust verdict.

3. DAMAGES—INJURIES TO LAND — EVIDENCE — SUFFICIENCY — EXCESSIVE DAMAGES.
> Where, in an action for injuries to land caused by removal of lateral support by excavating for a railroad track, there is no tangible testimony of any damage other than the loss of the land which has slid down the bank and inconvenience in farming such land as remains between the slides, the whole not exceeding an acre, of the value of $150, a verdict for $450 is excessive and a remittitur of $200 will be required as a condition of affirmance.

Error to Kent; Perkins, J. Submitted April·15, 1907. (Docket No. 83.) Decided May 18, 1907.

Case by James A. Dickinson and Jane Dickinson against the Pere Marquette Railroad Company for damages to land. There was judgment for plaintiffs, and defendant brings error. Affirmed on condition.

Plaintiffs own a farm in Alpine township, Kent county, a little north of Grand Rapids. This farm is 160 rods long north and south, and 80 rods wide east and west. The defendant's right of way, 100 feet in width, and Mill creek, a small stream, extend across the land, entering at the north end and leaving at the south end. In the summer of 1905 high water in Mill creek washed away a large portion of defendant's roadbed through plaintiffs' farm. It was claimed by plaintiffs that the roadbed would not have been washed out if the course of Mill creek had not been diverted when the roadbed was originally constructed, and that the defendant was liable for all damages resulting from the diversion of the course of the creek.

Under this claim plaintiffs introduced evidence to prove that, when the roadbed was washed out, their land was

greatly damaged by the gravel which was washed upon it and by other effects of the washout. Upon cross-examination plaintiffs' witnesses testified that the roadbed had been constructed more than 30 years before it was washed out and more than 20 years before they bought their farm, and that the high water by which the roadbed had been washed out was an unprecedented occurrence.

The defendant immediately rebuilt its roadbed; but, for the purpose of preventing future washouts, it located its roadbed and track about 25 feet west of its former location, but within the right of way. In moving its tracks to the west the defendant made an excavation so near the line of its right of way that subsequent rains formed several gullies in the embankment which worked back into plaintiffs' land. The longest gully had worked into plaintiffs' land a distance of 15 feet at the time of the commencement of this suit. Less than one twenty-fourth of one acre of surface had been washed into the excavation on defendant's right of way at the time of the commencement of the suit, and a strip of land one rod in width the whole length of plaintiffs' farm, along the west side of defendant's right of way, making a total of one acre, would include all of the gullies which had formed on the land on account of the excavation on defendant's right of way, and would also include land not affected by gullies or otherwise. There were no buildings along the right of way, and the land that would be included in that one acre, assuming that the right of way fence had been moved back, was land which had been used for ordinary farming purposes, and was suitable for such purposes only. Plaintiffs' testimony fixed the value of the farm at $100 to $125 an acre. Plaintiffs claimed damages for the injuries to their land by removing its lateral support, so that the gullies had worked into the land from defendant's excavation. James A. Dickinson, one of the plaintiffs, testified that in his opinion the farm was damaged $800 by the gullies that had formed in it. Jane Dickinson, the other plaintiff, testified that in her opinion the

damage to the farm from that cause was $500. Charles E. Belknap, a witness for the plaintiffs, testified that in his opinion the damage was $1,000. Ralph E. Fosgat, Mrs. Dickinson's brother, testified that in his opinion the damage was $600 to $1,000. And Daniel O'Brien, another witness for the plaintiffs, testified that in his opinion the damage was $500 to $600. Defendant called a witness, who estimated the injury to the farm at about double the value of the land taken up by the gullies.

Plaintiffs also claimed large damages by reason of the fact that the change in the location of defendant's roadbed had destroyed farm crossings which they had previously enjoyed. They estimated their damages from this cause at not less than $500.

The trial judge instructed the jury that plaintiffs could not recover damages for the diversion of the course of Mill creek and for the washing out of defendant's roadbed, because it appeared that the course of the creek had been diverted more than 30 years before the suit was brought, and the proximate cause of the washout was unprecedented high water, for which the defendant was not legally responsible. He also instructed the jury that there could be no recovery for interference with plaintiffs' farm crossings because the defendant had a right to change the location of the crossings if such a change became necessary in the proper operation of the road. The only issue submitted to the jury was the claim for damages to plaintiffs' farm resulting from the excavation of the defendant above stated. A verdict was rendered by the jury in favor of the plaintiffs for $450. Defendant made a motion for a new trial on the grounds that the verdict was excessive; that the introduction of testimony under the various counts of the declaration was prejudicial; that the introduction in evidence of opinions of witnesses as to the amount of plaintiffs' damage was prejudicial; that the court erred in refusing to strike out such testimony and in instructing the jury that it might be considered. This

motion was overruled for reasons set out in writing by the circuit judge.   The defendant brings error.

*Stevens, McPherson & Bills*, for appellant.

*Carroll & Nichols*, for appellees.

Montgomery, J. (*after stating the facts*).   In this court it is contended that the circuit judge erred in refusing to strike out the testimony of witnesses stating their opinions as to the amount of damages resulting from the washing and caving away of the land.   This motion was made at the close of all the testimony and after the testimony questioned had been received without objection, and the witnesses had departed.   The measure of damages had been stated in the presence of the jury to be the deterioration of the value of the farm by reason of the negligent acts of defendant.   We cannot doubt that the court, the witnesses, and counsel all understood that this was precisely what the witness was attempting to state; and, while it may be conceded that the form of question propounded was objectionable if timely objection had been made, we do not think this slip for which defendant's counsel was equally responsible with plaintiffs worked any injury to defendant.   See *Zabel* v. *Telephone Co.*, 127 Mich. 402.

It is next urged that a new trial should have been granted because the joining of demands for which plaintiffs were not entitled to recover with that upon which they did recover resulted in prejudicing the jury unduly and in a verdict which was unjust.   We do not think this a legal ground for a new trial.   The plaintiffs had a right to join several demands for different torts, and to attempt a recovery on each in good faith.

It is also insisted that the circuit judge should have granted a new trial on the ground that the damages allowed were excessive.   We feel constrained to hold that this contention should prevail.   It is true there is a

basis in the testimony of the plaintiffs' witnesses for a larger verdict than that given, but it is not understandable how such figures could be made. The circuit judge distinctly limited the plaintiffs to damages already accrued. There was no tangible testimony of any damage other than the loss of the land and inconvenience in farming such as lay within the 15-foot strip across the plaintiffs' farm. If it be assumed that it was made necessary to remove the fence, the expense of doing so might be added. We think the statement of defendant's witness that double the value of the land taken would be sufficient compensation was sufficiently liberal, and on this basis a verdict of $250 would have covered the extreme value.

The judgment will be reversed and a new trial ordered, unless the plaintiffs shall remit the sum of $200 within 30 days. On filing such remittitur, the judgment will stand affirmed, except that defendant will recover costs in this court as upon a reversal.

McALVAY, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred