(20 App. Div. 459.)

McCLURE v. LAW.

(Supreme Court, Appellate Division, First Department. August 4, 1897.)

1. MONEY HAD AND RECEIVED—WHEN ACTION LIES.
    An action for money had and received cannot be maintained by a corporation to recover a sum received by a former director as a bribe for resigning his office and procuring control of the corporation to be turned over to the purchaser for corrupt purposes.

2. CORPORATIONS—FRAUD OF DIRECTOR—REMEDY OF CORPORATION.
    The only remedy of the corporation in such case is an action to recover damages for the fraud practiced upon it by the director.

Appeal from trial term, New York county.

Action by David McClure, as receiver of the Life Union, against William H. Law, for money had and received. From a judgment entered on a verdict directed in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and PARKER, JJ.

H. D. Hotchkiss, for appellant.
David McClure, in pro. per.

RUMSEY, J. On the 16th day of June, 1891, the defendant became a director in the Life Union, an insurance corporation organized under the laws of the state of New York upon the co-operative or assessment plan. On the 26th day of December in the same year he became the president of the corporation. A considerable time before that, and in the month of April, 1891, the Life Union had been engaged, through some of its directors, in an effort to obtain control of another insurance company known as the Flower City Life Association of Rochester. To that end an agreement had been made for the purchase by the Life Union of the membership of the Flour City Association. On the 10th of April, 1891, the trustees of the Life Union passed a resolution to execute notes to that corporation to the amount of $35,000, the proceeds of which were to be used in the purchase of the Flour City Association, and the notes were to be paid from such portion of the income of the Life Union as might properly be applicable thereto. In accordance with this resolution, 35 notes of $1,000 each were made by the officers of the Life Union, 11 of which were subscribed for by persons connected with the corporation, and 3 of them were taken by the defendant. These notes were utterly void, and were subsequently so adjudged. McClure v. Levy, 147 N. Y. 222, 41 N. E. 492. After this transaction had been had, the defendant became one of the officers, and

finally the president, of the Life Union, as before stated, and as such, it appears from the testimony, he undertook to make out of his connection with the company a sufficient profit to enable him to recoup the loss of the $3,000 which he had suffered by subscribing to these invalid notes. To that end he entered into a transaction which is the subject of this action. The facts connected with the transaction do not seem to be disputed.

It appears from the facts shown that at that time the Life Union was in a very solvent condition. As stated by the officers in a circular, signed by this defendant among others, the company had something over $68,000 in cash and about $38,000 of unpaid losses, of which a small portion only was due. There seems to have been a large reserve fund, the precise amount of which was not stated, and assessments unpaid sufficient to meet a large portion, if not all, of the expenses and just claims against the company, so that the members of the company had every reason to believe from the statement that its affairs were in a flourishing condition. Such being the condition of the company, it seems that one Mr. Louis P. Levy desired for his own purposes to procure the control of it, and for that purpose he made a contract with the defendant and other members of the board of directors to the effect substantially that he would pay them the sum of $15,000, in consideration for which they would resign their offices as directors from time to time, as he might request, and would substitute in their places other persons, to be nominated by him, so that he and his creatures might have the entire control of the corporation. The money was to be paid by him in installments, the last of which was to be paid at the time when he obtained the full control of the corporation; and the object of the contract, as stated by the witness, was to deliver to him the absolute control of the Life Union. This agreement was carried out, and the result was that these trustees transferred to Levy the full control of the corporation whose interests they were bound to protect, and received from him the amount of the consideration which he had agreed to give them. As might be expected, shortly after this transaction was completed the affairs of the Life Union ceased to flourish, and within a few months it went into the hands of a receiver, Mr. Levy having recompensed himself for his investment by depleting the treasury of the company of all the money that was in it, leaving to the members nothing but the liabilities, after he himself had taken possession of the assets. The receiver who was in consequence appointed brought this action against this defendant, as well as other actions against other defendants, to recover the money received by them as their share in the transaction. The complaint as framed contained three causes of action. Two of them were for money had and received by the defendant, and were based upon the theory that the money which he received from Levy was the property of the corporation, and, consequently, he was bound to answer to the corporation for the whole of the money, or so much of it, at least, as he received for his own use. The third cause of action was based upon the theory that the act of the defendant in turning over the control of the corporation to Levy was

a breach of trust, and that he was liable in damages to the corporation for any injury which it might have suffered by reason of that act. This complaint in an action against another defendant for his part in the same transaction was demurred to for the reason that several causes of action were improperly united, and that demurrer was sustained by this court. McClure v. Wilson, 13 App. Div. 274, 43 N. Y. Supp. 209. The question was not raised there whether the facts alleged in the first two causes of action were sufficient to constitute a cause of action, but the only question was whether, if they did constitute a cause of action, they could be united with the third count of the complaint, setting up a cause of action for damages for a tort. Upon the trial the plaintiff was required to elect whether he would proceed upon the first two causes of action set out in the complaint upon the implied contract for money had and received, or upon the third cause of action, seeking to recover damages for the tort of the defendant in violating his duty towards the Life Union. He elected to proceed upon the first two causes of action, and the trial was continued upon that claim. As there was no disputed question of fact, the court ordered a verdict for the plaintiff against the defendant for the amount of money which he had confessedly received out of the sum which Levy paid to the directors, and judgment was entered for that sum and interest and costs, from which the defendant takes this appeal.

The theory upon which the plaintiff proceeded upon the trial was clear. It was that Law had received from Levy moneys which were the property of the company, or which the company was entitled to consider as its property, and for that reason the company was entitled to recover the money which had been paid to him, in an action for money had and received by him to its use. Upon no other theory could the causes of action set out in the first and second counts of the complaint be sustained, because an action for money had and received will only lie when one has received money of another which he had no right to retain as against that other, but which, of right and justice, should be paid to the person to whom it belongs. Lawson v. Lawson, 16 Grat. 230. In such a case the law will imply a contract on his part to repay it; but, unless the circumstances are such that a contract of that nature can be implied, it is quite clear that an action for money had and received will not lie. The theory of the action is either that the money was received by the defendant in the performance of some duty which he owed to the plaintiff, or in payment for some property or property right which the plaintiff owned, or which, as against the defendant, it might claim to own; and the plaintiff cannot recover unless he establishes one or the other of these things. Unless the right comes to exist in some of these ways, there is no ground for saying that the money received by the defendant was money belonging to the plaintiff. It is quite clear in this case that the money was not received by Law in payment for any property or property right which belonged to the Life Union. The only way, then, in which this money can be claimed by the Life Union is that Law, in making the contract by which he received it, was in the performance, as director, of

some duty which he owed to the company, and which, if performed, would have entitled the company to receive the money. That necessarily involves the proposition that the thing which he did was one which the corporation itself might have done, and that it has ratified his act, so that it has become entitled to regard that act as one done by him in his capacity as agent of the corporation, and consequently to claim that the money he received was received as agent, and should be paid over to it. What, then, was the contract that Law undertook to make? It is very plain. It was one which had no relation whatever to the transaction of any of the business of the company. It was one which, in any aspect of the case, the company could have authorized, or he, as director, could have done. As director of the company, he had certain powers and duties with reference to the transaction of business of the company. As to those matters, if he performed them with proper regard for the interest of the company, the company was bound; and if in performing them he attempted to defraud the company, and secure a benefit for himself, nevertheless the corporation might ratify his agreement, and require him to account for the profit he would have made by his contract. But this contract came within neither of these classes. It had only for its object that for a sum to be paid to him he should surrender his position as director, and turn the company over to another person to do what he chose with it. He was simply to abandon his position as a trustee and guardian of the interests of the corporation which it was his duty to protect. This could in no sense be said to be a part of his duty as director, nor was it a thing which he could have done in the performance of these duties. It had no relation whatever to the business of the company. It was not a thing which the corporation could have authorized him to do, and consequently it was not a thing which could have been done in performance of the business of the company, and it could not have been ratified by the corporation. It was simply a sale by him of his position as director. It was a violation of the duty which he owed to the corporation, whose trustee he was. It was also utterly void, and without doubt he would be liable in damages to the corporation for any injury which resulted to it from this abdication of his duties, and the transfer of the control of the corporation to other persons, by whom it was plundered. But the money he received for it was in no sense the money of the corporation, and there is no way in which it could be transmuted into the money of the corporation, because, as was said, it was not a thing which, as director of the corporation, he could have done in the performance of his business. For this reason, therefore, there can be no foundation for the action for money had and received, which, as we see, depends upon the idea that the money was received in the performance of some act done in the business of the corporation, or which the corporation had a right to regard as so done. We have been unable to see any principle upon which an action for money had and received could be maintained, nor are we referred to any authority which would enable the plaintiff to recover in the form of action upon which he has decided to rest his claim. The case of Bank v. Heiron, 5 Exch. Div. 319, has

been referred to. The question presented in that case does not arise here. In that case Heiron, a director of the Metropolitan Bank, had, by false and fraudulent statements as to the pecuniary position of a debtor of the bank, induced the bank to accept from the debtor the sum of £50 in satisfaction of a claim which they had against him for £3,800. It was alleged that Heiron received from the debtor a bribe of £250, in consideration of which he made the false representations to the bank by which it was induced to compromise the debt for £50, and the action was brought by the bank to recover from Heiron the sum of £250. The plaintiff was defeated in that action because the statute of limitations had run against the claim, and the correctness of that ruling was the only question presented to the court. During the argument, and in delivering their opinions, the judges made use of some expressions from which it might be inferred that, if the statute of limitations had not run, the action might have been maintained; but the general drift of the opinions of the judges was to the effect stated by Brett, L. J., that an action at law might lie on the case for the misrepresentations made by the defendant, if they were fraudulently made, and that the loss which the bank suffered through them would be the measure of damages, but he did not understand how this £250 could be recovered at law on the ground that the defendant received it as a bribe. The court, in the argument, drew the distinction between a sum of money received by a director upon some trust connected with the business of the corporation and a sum of money received for a bribe, and which never actually became a part of the funds of the company. But in that case there were grounds upon which a recovery might have been sustained, because the act which the defendant had done in pursuance of the bribe was a thing done directly in the line of his duty·as a trustee of the corporation; and, if it was fraudulently done, it might plausibly be said that the corporation could waive the tort committed upon it, and claim from him the money received by him in the performance of his duty. But that is a different case from the one presented here, because, as we have seen, the thing which Law did in this case had no connection with any business of the corporation. It had no more to do with the business of the corporation than if for a consideration he had agreed to rob the safe of the corporation, and turn the money over to a third party; in which case, although the corporation might have an action against him for damages, it could hardly be said that it had an action for money had and received.

These considerations require us to hold that the action in the form in which the plaintiff elected to pursue it at the trial cannot be sustained, and the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.