A point is made as to the form of the decision. It was embodied in an order reciting the pleadings and the question presented by the demurrer. The order sustaining the demurrer and directing the entry of an interlocutory judgment then follows this recital. The learned trial justice did not direct the entry of this order. He signed it as decisions and ex parte orders are usually signed. We think this was a sufficient decision within the meaning of sections 1010 and 1021 of the Code of Civil Procedure. Eaton v. Wells, 82 N. Y. 576; Garland v. Van Rensselaer, 71 Hun, 1, 24 N. Y. Supp. 783; Funson v. Philo, 27 Misc. Rep. 262, 58 N. Y. Supp. 419.

The interlocutory judgment appealed from should be affirmed, with costs. All concur.

---

(30 Misc. Rep. 330.)

### WOOD v. MANCHESTER FIRE INS. CO.

(Supreme Court, Special Term, New York County. January, 1900.)

CORPORATIONS—CONSOLIDATION—COMPENSATION OF OFFICERS.

An agreement by one insurance company that another, which it had absorbed by purchasing a controlling interest in its stock, shall pay to its president, on his retirement, a certain sum for his influence in securing the consolidation, is invalid, and he cannot recover the amount from the purchaser on refusal of payment.

Action by Silas P. Wood against the Manchester Fire Insurance Company. Judgment for defendant on sustaining a demurrer to the complaint.

De Forest Bros. (Robert Thorne, of counsel), for plaintiff.
Wensley & Gilroy (Robert L. Wensley, of counsel), for defendant.

RUSSELL, J. The demurrer to the complaint presents serious obstacles to any recovery by the plaintiff upon a claim for an unpaid balance of $9,000, part of the consideration of the sale of the influence of the plaintiff, as president, director, and stockholder of the American Fire Insurance Company to the defendant, the Manchester Fire Insurance Company, which is a foreign corporation. The defendant was desirous of acquiring the stock, control, business, and good will of the American Fire Insurance Company, and found it necessary to secure the direct participation of the plaintiff to accomplish that result. By various propositions made in August, 1897, on behalf of defendant, it secured prior to 1898 all but $10,000 or $15,000 of the stock of the American Company, which was capitalized at $400,-000, the resignation of the executive officers and directors of the American Company, and the complete control of that organization. The propositions which were accepted and acted upon by the plaintiff required the passage over to the defendant of the majority of the stock, the wiping out of the old board of directors, and the resignation of the plaintiff as president of the American Company. In consideration of the success of the scheme proposed, each stockholder was to have $100 per share for his stock on the transfer of his certificate. The plaintiff was to retain an official connection with the American Company, as vice president, at a salary of $6,000, at least

until the annual meeting in April. "The board of directors of the American to have the right to vote an honorarium of $6,000 in cash to Mr. Wood and $3,000 in cash to Mr. Downer. If on the 1st of January, 1898, Mr. Wood desires to sever his connection with the company, or, on the other hand, the company desires to forego Mr. Wood's services, a further sum of $9,000 is to be paid Mr. Wood by the American." The $6,000 referred to was paid the plaintiff. He gave notice of his desire to terminate his connection with the American Company on the 1st of January, 1898, and the American Company no longer required his services, as was evidently the contemplation at the time the propositions were made and accepted. The American Company now refuses to pay the $9,000, and, meeting with a like refusal by the defendant, the purchasing company, the plaintiff brings this action to recover that amount.

It is unnecessary to cite the cases referred to in the brief of counsel for the plaintiff to show that shareholders have the right to sell their stock, and at any stockholders' meeting to vote and act in the interest and protection of their own pecuniary requirements. There is no doubt that the plaintiff, as stockholder of the American Company, might barter his share away, and even obtain a greater sum than that offered to any other stockholder. He might even do so if he was aware that the purchaser was acting in the contemplated acquisition of a controlling interest in the company to which he belonged. But when a stockholder accepts the trusteeship of a corporation, and becomes director and president, the freedom of his right of action as a stockholder is fettered by the lines of his trust duty. It is a voluntary thing for him to assume such a position, but, once accepted, paramount duties flow from the responsibility which he takes. As president and director, it is his duty to make the company prosperous, so that it will not only increase the value of its acquisitions for the benefit of the stockholders, but also will continually gain in protective power to guard the interests of the insuring public, who deal with the corporation on the faith of its ability to carry out its obligations, continue existence as a company, and meet the executory contracts for the future. The sale of a corporation organized and permitted to exist for the purpose of making insurance is presumptively an act of felo de se. It needs exceptional and extraordinary circumstances to justify such action, outside of the privileges given by statute to voluntarily dissolve or consolidate. When, therefore, the trustees of a corporation, for their own pecuniary benefit, even though that benefit may be shared by others interested to a smaller relative degree, seek to gain pecuniary advantage by the sale of the corporation and of their own trust duties to other persons, the act is one which cannot be sustained by the law. It is not a sufficient answer that the foreign corporation was engaged in the same business, and could carry out the contracts of the American Company. The purpose of the purchasing company was to absorb the other, so that its vitality should either cease entirely, or that it could be used as a tender in the work and increase of the larger company. I therefore regard the contract as invalid in law, and not capable of enforcement as an executory

obligation. By the contract itself, it was the president's own company which should have the privilege of voting him an honorarium of $15,000. That money would be drawn from the pockets of the nonassenting stockholders as well as those who did assent, would be a deduction from the amount of the reserve fund of the American Company, and would not be a payment for expenses incurred legitimately in the management of the company in its lawful and proper business. That sum of $15,000 could never have been collected of the American Company, and the trustees, who were left in charge after the abandonment of the company by the president and the other directors, rightfully refused to vote the plaintiff the unpaid balance of the $9,000. I am inclined to think that, if the present directors of the American Company had voted to pay that sum, an action might have been maintained to recover it back. McClure v. Law, 161 N. Y. 78, 55 N. E. 388; Id., 20 App. Div. 459, 47 N. Y. Supp. 84.

There is still another objection to a recovery. I do not find that the defendant company ever promised to pay the plaintiff this sum of $9,000. It simply consented, in view of its approaching interest in the American Company, to allow the American Company to vote the honorarium to the plaintiff. The only theory upon which the plaintiff can seek to charge the defendant company is that now, being in full possession and control of the American Company under the agreement referred to, it had the power, and it was its duty, to fulfill that agreement, in all its scope and purpose, and that the directors of the American Company, being the creatures or servants of the defendant company, could, at the will and caprice of the latter company, vote to pay the remaining balance. This theory is hardly sufficient, and its suggestion again illustrates the illegal character of the arrangement made, so far as it is here involved. The plaintiff can only claim that the defendant company should pay a reward to him for services in the complete absorption by the defendant company of the American Company, and the transfer of the trust positions in the American Company to others selected by the defendant company, which result could not have been accomplished but for that reward which was the object and motive of the plaintiff in the destruction of the primary objects of the organization and existence of his own company. Judgment for defendant on demurrer, with costs.

Judgment for defendant, with costs.