SILAS P. WOOD, Appellant, *v.* MANCHESTER FIRE ASSURANCE COMPANY, Respondent.

*An agreement to effect a transfer of the control of an insurance company, made by its president with another company, is invalid.*

A contract between a foreign insurance company and the president of a domestic insurance company, by which the latter agrees to assist the foreign company to obtain the resignation of the executive officers and directors, and the complete control, of the domestic company in consideration of which the board of directors of the domestic company is " to have the right of voting an honorarium of six thousand dollars ($6,000) " to the president, is invalid, and if after the foreign company by its creatures and servants has been put in control of the domestic company, the board of directors of the latter company refuses to vote the honorarium, the president cannot recover it from the foreign company.

APPEAL by the plaintiff, Silas P. Wood, from a final judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 15th day of February, 1900, upon the decision of the court, rendered after a trial at the New York Special Term, sustaining the defendant's demurrer to the second amended complaint and dismissing the said complaint.

*Robert Thorne,* for the appellant.

*Robert L. Wensley,* for the respondent.

Judgment affirmed, with costs, on the opinion of the court below.

Present — VAN BRUNT, P. J., RUMSEY, PATTERSON, O'BRIEN and McLAUGHLIN, JJ.

The following is the opinion of the court below:

RUSSELL, J. :

The demurrer to the complaint presents serious obstacles to any recovery by the plaintiff upon a claim for an unpaid balance of $9,000, part of the consideration of the sale of the influence of the plaintiff as president, director and stockholder of the American Fire Insurance Company to the defendant, the Manchester Fire Assurance Company, which is a foreign corporation. The defendant was desirous of acquiring the stock, control, business and good

will of the American Fire Insurance Company, and found it neces-
sary to secure the direct participation of the plaintiff to accomplish
that result. By various propositions, made in August, 1897, on
behalf of defendant, it secured prior to 1898 all but $10,000 or
$15,000 of the stock of the American company, which was capital-
ized at $400,000 ; the resignation of the executive officers and
directors of the American company, and the complete control of
that organization. The propositions which were accepted and acted
upon by the plaintiff required the passage over to the defendant of
the majority of the stock, the wiping out of the old board of direct-
ors and the resignation of the plaintiff as president of the Ameri-
can company. In consideration of the success of the scheme pro-
posed, each stockholder was to have $100 per share for his stock on
the transfer of his certificate ; the plaintiff was to retain an official
connection with the American company as vice-president, at a salary
of $6,000, at least until the annual meeting in April; "The board
of directors of the American to have the right of voting an honor-
arium of Six thousand dollars ($6,000) in cash to Mr. Wood and
Three thousand dollars ($3,000) in cash to Mr. Downer. If on the
1st of January, 1898, Mr. Wood desires to sever his connection with
the company, or, on the other hand, the company desires to forego
Mr. Wood's services, a further sum of Nine thousand dollars ($9,000)
is to be paid Mr. Wood by the American." The $6,000 referred
to was paid the plaintiff. He gave notice of his desire to terminate
his connection with the American company on the 1st of January,
1898, and the American company no longer required his services, as
was evidently the contemplation at the time the propositions were
made and accepted. The American company now refuses to pay
the $9,000, and, meeting with a like refusal by the defendant, the
purchasing company, the plaintiff brings this action to recover that
amount. It is unnecessary to cite the cases referred to in the brief
of counsel for the plaintiff to show that shareholders have the right
to sell their stock, and at any shareholders' meeting to vote and act
in the interest and protection of their own pecuniary requirements.
There is no doubt that the plaintiff, as stockholder of the American
company, might barter his shares away and even obtain a greater
sum than that offered to any other stockholder; he might even do
so if he was aware that the purchaser was acting in the contemplated

acquisition of a controlling interest in the company to which he belonged; but when a stockholder accepts the trusteeship of a corporation, becomes director and president, the freedom of his right of action as a stockholder is fettered by the lines of his trust duty. It is a voluntary thing for him to assume such a position; but once accepted, paramount duties flow from the responsibility which he takes. As president and director it is his duty to make the company prosperous, so that it will not only increase the value of its acquisitions for the benefit of the stockholders, but also will continually gain in protective power to guard the interests of the insuring public, who deal with the corporation on the faith of its ability to carry out its obligations, continue existence as a company, and meet its executory contracts for the future. The sale of a corporation, organized and permitted to exist for the purpose of making insurance, is presumptively an act of *felo de se*. It needs exceptional and extraordinary circumstances to justify such action outside of the privileges given by statute to voluntarily dissolve or consolidate. When, therefore, the trustees of a corporation for their own pecuniary benefit, even though that benefit may be shared by others interested to a smaller relative degree, seek to gain pecuniary advantage by the sale of the corporation and of their own trust duties to other persons, the act is one which cannot be sustained by the law. It is not a sufficient answer that the foreign corporation was engaged in the same business, and could carry out the contracts of the American company. The purpose of the purchasing company was to absorb the other, so that its vitality should either cease entirely, or that it could be used as a tender in the work and increase of the larger company. I, therefore, regard the contract as invalid in law, and not capable of enforcement as an executory obligation. By the contract itself it was the president's own company which should have the privilege of voting him an honorarium of $15,000. That money would be drawn from the pockets of the non-assenting stockholders as well as of those who did assent; would be a deduction from the amount of the reserve fund of the American company, and would not be a payment for expenses incurred legitimately in the management of the company in its lawful and proper business. That sum of $15,000 could never have been collected of the American company, and the

trustees, who were left in charge after the abandonment of the company by the president and the other directors, rightfully refused to vote the plaintiff the unpaid balance of the $9,000. I am inclined to think that if the present directors of the American company had voted to pay that sum an action might have been maintained to recover it back. (*McClure* v. *Law,* 161 N. Y. 78; S. C., 20 App. Div. 459.) There is still another objection to a recovery. I do not find that the defendant company ever promised to pay the plaintiff this sum of $9,000. It simply consented, in view of its approaching interest in the American company, to allow the American company to vote the honorarium to the plaintiff. The only theory upon which the plaintiff can seek to charge the defendant company is that now, being in full possession and control of the American company under the agreement referred to, it had the power and it was its duty to fulfill that agreement in all its scope and purpose, and that the directors of the American company, being the creatures or servants of the defendant company, could, at the will and caprice of the latter company, vote to pay the remaining balance. This theory is hardly sufficient, and its suggestion again illustrates the illegal character of the arrangement made, so far as it is here involved. The plaintiff can only claim that the defendant company should pay a reward to him for services in the complete absorption by the defendant company of the American company, and the transfer of the trust positions in the American company to others selected by the defendant company, which result could not have been accomplished but for that reward, which was the object and motive of the plaintiff in the destruction of the primary objects of the organization and existence of his own company.

Judgment for defendant on demurrer, with costs.