ZABEL v. NEW STATE TELEPHONE CO.

1. CONTRACTS—STOCK SUBSCRIPTIONS—PUBLIC POLICY.
   A contract whereby plaintiff was to assist defendant in obtaining subscriptions to its capital stock, containing a provision that plaintiff's father should subscribe for a certain amount of the stock at a public meeting to be held in furtherance of the enterprise, but should in fact take only so much of the stock as should be paid for by the commissions earned by plaintiff, is not void as against public policy, unless it was contemplated that the conditional nature of the subscription should be concealed from the public; and whether such was the intention of the parties is a question for the jury.

2. SAME—BREACH—DAMAGES—EVIDENCE.
   In an action for the breach of a contract to furnish telephone service, it is competent for plaintiff to testify to what the value of the service would have been to him if furnished.

Error to Monroe; Kinne, J.   Submitted January 11, 1901.   Decided July 10, 1901.

*Assumpsit* by John O. Zabel and Thornton Dixon, co-partners as Zabel & Dixon, against the New State Telephone Company, for commissions on the sale of stock, and the breach of an agreement to furnish telephone service. From a judgment for plaintiffs, defendant brings error. Affirmed.

*Flowers & Moloney,* for appellant.

. *Willis Baldwin,* for appellees.

MONTGOMERY, C. J.   This is an action for breach of contract.   The contract was in writing, and provided that the plaintiffs should assist the defendant and its agents in the sale of stock, and for such services receive in stock 10 per cent., and in coupons 1 per cent., of all stock sales made, with the assistance of plaintiffs, in Dundee and surrounding towns, and also 5 per cent. in cash on the amount realized from the organization of local exchanges.   In addition, the company agreed to grant plaintiffs free telephone service between Dundee and Petersburg, "if said lines are built from results of assistance given by said parties, and to put instruments in their office in Petersburg and their office in Dundee."   It further provided that John J. Dixon, who is the father of one of the plaintiffs, should subscribe for 10 shares of stock, at $100 each, at a meeting to be held in Dundee for the promotion of said enterprise, but that said John J. Dixon was not to pay cash for the same, but the 10 per cent. commission provided for in the contract should be accepted by the company in payment for said stock, if said commission should amount to $1,000; but, if said commission should amount to less than $1,000, on a final settlement under the contract said John J. Dixon should release as much of said shares as should remain over and above the amount due the plaintiffs as commissions.   The plaintiffs recovered a verdict for $431,

—$231 for commissions for sale of stock, and $200 for the failure of the company to furnish free telephone service. Defendant brings error.

The first contention of defendant is that the contract is void on grounds of public policy, reference being had to the agreement to secure the subscription of John J. Dixon. The circuit judge charged the jury upon this question as follows:

" In the subscription of each person to the capital stock of a corporation every other subscriber has a direct interest. Their respective subscriptions are contributions to a common object. The action of each in his subscription is supposed to be influenced by that of the others, and every subscription to be based upon the ground that the others are what they are represented to be. The fact that one person binds himself to place a certain amount of his money upon the risk involved in the enterprise is an inducement to others to venture in like manner, and any secret agreement between the company and a subscriber or his privies, which changes the conditions of the subscription, is a fraud upon the other subscribers, and renders this agreement, and any contract growing out of it, null and void; and any agreement between the company and second parties, which contemplates a deception to be practiced upon others not parties to the agreement, is contrary to public policy and void.

"Therefore, if you believe that the contract sued upon was entered into with the understanding that John J. Dixon was to appear at a public meeting in Dundee and subscribe for 10 shares of the stock, without stating the conditions of his subscription, then your verdict will be, ' No cause of action;' and this would be your verdict even though you find that no meeting was in fact held, for it is the intention of the parties which vitiates the agreement. Or if you believe—that is, if you find from the evidence— that the plaintiffs, or either of them, solicited subscriptions for the stock of the defendant company, and represented that John J. Dixon had subscribed for 10 shares of this stock, without stating that his subscription was conditional, then your verdict should be for the defendant, ' No cause of action.' Or if you find from the evidence that John J. Dixon, with the consent or knowledge of either of the plaintiffs, solicited subscriptions for the stock

of the defendant company, and represented that he had subscribed for 10 shares of this stock, without stating that his subscription was conditional, then your verdict should be for the defendant, 'No cause of action.' Or if you find from the evidence that the agents of the defendant company solicited subscriptions for the stock of the company, and, by and with the consent or knowledge of the plaintiffs or either of them, represented that John J. Dixon had subscribed for 10 shares of this stock, without stating that his subscription was conditional, then your verdict should be for the defendant, 'No cause of action.' Or if you believe that the agents of the defendant company solicited subscriptions for the stock of this company, and in the presence of the plaintiffs, or either of them, represented that John J. Dixon subscribed for 10 shares of this stock, without stating that his subscription was conditional, then your verdict should be for the defendant, 'No cause of action.' If you find that this contract is vitiated with fraud, then the plaintiffs cannot recover; and to establish this fraud it is not necessary that you are convinced that any person has been misled in subscribing to this stock, but it is sufficient if you find that an attempt has been made to mislead or deceive prospective subscribers."

We think this instruction correctly states the law of the case. It is to be noted that the contract on its face does not call for any act on the part of John J. Dixon or the plaintiffs calculated to mislead or deceive the public. This contract could have been complied with had John J. Dixon publicly made subscription for the stock, and at the same time declared the terms of his subscription. So we have to look elsewhere for evidence of an intention to deceive. The evidence in the case was such as to justify the submission of that question to the jury. They have found against the defendant, and this finding is conclusive.

It is next contended that there was error in admitting evidence of the damages sustained by the plaintiffs by reason of the failure of the defendant to furnish telephone service between Dundee and Petersburg. The rule is cited from Sutherland on Damages (§ 444) that ordinarily a

witness is not allowed to give his opinion of the amount of damages a party sustains from a given act or omission, because, when he does so, he includes the law as well as the fact. This is a correct statement of the law, and, if it has been invaded, error has been committed. But, turning to the record, we find that, while the question put to the witness was, "What is the damage to you and Mr. Dixon by reason of not having those telephones furnished you in your respective offices?" yet that, from the connection in which this question was put, the specific item which was called for is shown to have been the value of the service; for the question, before it was answered, was put in various forms, one of which was, "What is the value of that telephone service? What would it have been if completed,—the convenience of having a phone in your offices, and the use of it, if you used it more if you did not pay toll than if you did, per year, up to the present time?" We think this inquiry was competent. The plaintiffs had the right to show that they had been deprived of this telephone service, and we think it was competent for them to estimate what the value of that service would have been to them if furnished.

We discover no error to the prejudice of the defendant, and the judgment will be affirmed.

MOORE, LONG, and GRANT, JJ., concurred with MONTGOMERY, C. J. HOOKER, J., concurred in the result.