### 2906. ROBERTS v. ARNALL.

1. "Extrinsic evidence is always admissible to show that the object or consideration of an agreement is in fact illegal."
2. Parol evidence is admissible to show that a written contract, which on its face and by its terms purports to relate to a lawful transaction, was in fact entered into as a wagering contract, and that the lawful form was adopted as a guise to evade the law.

DECIDED JUNE 7, 1911.

Action for damage; from city court of Newnan—Judge Post. July 25, 1910.

*A. H. Freeman,* for plaintiff in error.

*W. G. Post, W. C. Wright,* contra.

POWELL, J. Arnall sued Roberts to recover damages for the latter's failure to deliver the cotton specified in the following written contract:

"Senoia, Ga., 6/29/1909.

"For and in consideration of the sum of $1.00 to M. V. Roberts in hand paid by J. Claude Arnall, as part payment of the cotton herein purchased, the receipt whereof is acknowledged, I hereby agree to sell to J. Claude Arnall 25 bales of cotton, delivered at Haralson, Ga., between the first and 25th of October next. The delivery to be made at such times, at seller's option, in lots of not less than 50 bales. Cotton to average not less than 500 pounds per bale. If

the cotton does not average 500 pounds per bale, I will deliver a sufficient number of bales to bring up the average to 500 pounds. The cotton to be of any grade between strict ordinary and fair, inclusive, at a price of 10½ f. o. b. cents per pound for 25 bales of 4's, said grade being good middling, American standard classification. With deductions and additions for other grades according to grade and such differences in effect on the day of delivery. It is fully understood and expressly agreed by the parties to this contract that same can not be settled by payment of money, but only by delivery of the actual cotton, in square merchantable bales weighing 500 pounds, as aforesaid.          [Signed]   M. V. Roberts.

"We accept the above contract, with its conditions and obligations.                                    [Signed]   J. C. Arnall."

The defendant tendered a plea alleging that the contract sued upon was illegal and void, because it was a wagering or gambling contract; "that at the date of the execution and delivery of the same it was understood by both of the parties to the same that there was to be no actual delivery of the cotton, but that on the date fixed for the delivery of the same there was to be a settlement between said parties of the difference based upon the market value of the cotton on that day. Defendant says that he was not a producer of cotton, and had no cotton on hand, nor had he contracted to purchase cotton to fulfill said contract, at the date of the said contract, and that the said contract was entered into by said parties purely as a speculation on chances; that said contract is unilateral, and not mutually binding between the parties." The court struck this defense. We may say, in passing, that the plea, so far as it alleged that the contract was unilateral, was not well taken.

On its face the contract between the parties appears to relate to a valid, legal, enforceable transaction. *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199 (37 S. E. 485, 81 Am. St. Rep. 28). In that case the general rule as to contracts for the future delivery of commodities is very well stated in the first three headnotes as follows: "An executory agreement for the sale of goods to be delivered at a future day is valid, though at the time the seller has not the goods in his possession, has not contracted to purchase them, and has no expectation of acquiring them otherwise than by producing, manufacturing, or purchasing them at some time before the day of delivery. Such a transaction is not rendered invalid by the provisions of section

3537 of the Civil Code [Civil Code of 1910, § 4117], unless it is made to appear that neither of the parties contemplated an actual delivery of the goods, and that it was the intention of both that there should be no actual delivery, but that on the day fixed for delivery there should be a settlement of their differences, based on the market value of the goods on that day. In that event the transaction would be a pure speculation upon chances but not otherwise. When a contract is valid upon its face, or, when taken in the light of the circumstances surrounding the parties at the time it was entered into, appears to be valid, it is incumbent on him who attacks the contract to show its invalidity." Counsel for both sides in this case seem to recognize that this is the rule. The point involved in the present case is whether the illegality of the contract can be shown by extrinsic evidence which contradicts the recitals appearing on the face of the written contract itself. It is well settled, as a general rule, that, "when a contract appears to have been reduced to writing, before parol evidence can be admitted to show a collateral agreement, it must appear, either from the contract itself or from the attendant circumstances, that the contract is incomplete, and that what is sought to be shown as a collateral agreement does not in any way conflict with or contradict what is contained in the writing." This quotation is taken from the sixth headnote in the case just cited.

1. While this is the general rule, there are certain exceptions. In Williston's Wald's Pollock on Contracts (3d ed.), 492, one of the exceptions is stated thus: "Extrinsic evidence is always admissible to show that the object or consideration of an agreement is in fact illegal. This is an elementary rule, established by decisions both at law and in equity." Before we proceed further, let us notice the suggestion that since the general rule on this subject is laid down as one of the propositions in the *Forsyth Manufacturing Company* case, cited above, and since in that case the contention was made that the contract was void because speculative, the conclusion follows that the court intended to hold that, where a contract for the sale of cotton was apparently valid on its face, parol evidence would be inadmissible to show that the actual agreement between the parties was one of a gaming nature; but an inspection of the decision in that case discloses that this rule of law was invoked, not in resistance to any effort to set up the illegality of the contract, but

in an effort to engraft upon it as a legal contract another term, in nowise affecting it with immorality or illegality,—namely, that the cotton which was to be delivered should be procured from a specified source.

2. Our reports are full of cases laying down and enforcing the general rule that unambiguous written contracts must speak for themselves, and that parol evidence is inadmissible to contradict, vary, or add to them. Still the exception which allows the admission of extrinsic and even parol evidence, to show that the object or consideration of the agreement was in fact illegal, has been as uniformly recognized. For instance, in *Henderson* v. *Thompson,* 52 *Ga.* 149, 152, the court laid down and most vigorously enforced the general rule; but it is also said in that case: "The exception to the rule is where the real contract is forbidden by law, and the parties have reduced to writing a contract legal on its face. In such cases public policy suspends the rule and allows the truth to be proven, in spite of and in contradiction to the writing." Cf. *Faircloth* v. *De Leon,* 81 *Ga.* 158 (7 S. E. 640) ; *Baggett* v. *Trulock,* 77 *Ga.* 369 (2), (3 S. E. 162) ; *Lytle* v. *Scottish Am. Co.,* 122 *Ga.* 458 (1, 7), 467 (50 S. E. 402). The Supreme Court of the United States in the case of Irwin *v.* Williar, 110 U. S. 499 (4 Sup. Ct. 160, 28 L. ed. 225, 229), in which there was a similar plea as to an apparently legal contract for the delivery of grain, said: "If, however, at the time of entering into a contract for the sale of personal property for future delivery, it be contemplated by both parties that at the time fixed for delivery the purchaser shall merely receive or pay the difference between the contract and the market price, the transaction is a wager, and nothing more. It makes no difference that a bet or wager is made to assume the form of a contract. Gambling is none the less such because it is carried on in the form or guise of legitimate trade." In Stewart *v.* Schall, 65 Md. 299 (4 Atl. 399, 57 Am. Rep. 327), a similar ruling was made, and the admissibility of extrinsic evidence to show the illegality of a contract which was lawful in form was recognized. Cf. Pearce *v.* Foote, 113 Ill. 288 (55 Am. Rep. 414). This court, in *Luke* v. *Livingston,* 9 *Ga. App.* 116 (70 S. E. 596), recognized the right to introduce parol evidence to show the invalidity of a similar contract, which we held to be valid on its face.

It is easy to see that if two persons desired to speculate upon the cotton market, and to put their transaction in such shape that the winner could enforce his contract by suit against the loser, all they would have to do, if any other rule than the one here announced were followed, would be to draw a written contract similar in form to the one here involved; for, unless the illegal purpose of the apparently legal contract could be shown by parol, the result would be that the aid of court could be successfully invoked to effectuate the unlawful purpose, as the only judgment which the court then could render would have the effect of causing the loser to pay to the winner just what it was contemplated he should pay under the very plan and purpose of the illegal transaction. Now, formalism and technicality are very important to the successful and orderly administration of justice in any juridic system; but there is too much plain common sense stored away in the substructure upon which our whole system is based to allow of any such result as that parties may take advantage of formal or technical rules designed for the carrying out of the law, and divert them into instrumentalities by which they may violate the very cardinals of the law itself. In nearly every case where ingenuity seeks to evade the law under cover of the law itself it finds itself flanked by some rule or exception by which the major purpose of the law protects itself. It is a good thing that the wisdom of the ages, which has thus become crystallized and expressed in our law, is capable of proving superior to the transient ingenuity of such individuals as from time to time rise up to proclaim that they have found a way to get around the law.

Of course, these strictures are not intended as comment upon the facts of the particular case. The present transaction may be perfectly legal. That question has not yet come under investigation, as the court struck the plea and admitted no testimony in support of it. As Chief Justice Bleckley said in *Faircloth* v. *De Leon,* 81 *Ga.* 158, 161 (7 S. E. 640), as to a stricken plea which sought to set up the illegality of a somehow similar attempt to evade one of the criminal laws of this State: "The plea may not be true; but, if true, it is quite sufficient."      *Judgment reversed.*