### HORBACH v. COYLE et al.

(Circuit Court of Appeals, Eighth Circuit. September 12, 1924.)

No. 6222.

1. **Contracts** ⊂⊐113(3)—**Directors' agreement, for secret bonus, to practice deception on stockholders and cause transfer of stock, held illegal.**

Corporate directors' agreement, in consideration of secret bonus, to practice deception on general stockholders, and cause transfer of majority of stock to another company, and to make its officers directors, in order that assets might be transferred to it, *held* illegal.

2. **Evidence** ⊂⊐419(11)—**Parol evidence, contradicting consideration recited in written contract, is inadmissible.**

Parol evidence, contradicting consideration expressed in instrument, and thereby defeating or changing its operation, or adding new matter, is inadmissible.

3. **Evidence** ⊂⊐437—**Parol evidence rule does not exclude evidence that consideration was vicious or illegal.**

Parol evidence rule does not preclude admission of evidence showing consideration for contract vicious or illegal.

4. **Contracts** ⊂⊐113(1)—**Contract having as object perpetration of fraud is illegal and void.**

Contract having for its object the perpetration of a fraud on a third person is illegal and void.

5. **Contracts** ⊂⊐113(3)—**Contract by one occupying confidential relation to use influence for another for secret consideration illegal.**

Contract by which one occupying a confidential relation with a third party for secret consideration agrees to use his influence to effect a bargain between such third person and the other party to the contract is illegal, as constituting or tending to constitute a fraud.

6. **Contracts** ⊂⊐113(3)—**Contract tending to induce corporate officers to disregard interests of corporation and stockholders is illegal.**

Contracts tending to induce corporate officers to act in disregard of true interests of

corporation and stockholders are illegal and invalid.

**7. Contracts ☞108(1)—If contract is within general void class, it matters not that it is free from fraud or corruption.**

If contract falls within general class void as against public policy, it matters not that it is free from any taint of fraud or corruption.

**8. Contracts ☞140 — Notwithstanding prima facie case is established by plaintiffs, defendants may show contract connected with prior illegal contract.**

That plaintiffs might make out a prima facie case, without disclosing the illegality of the contract sued on, does not prevent defendants from proving by parol evidence that such contract grew out of and was directly related to a prior illegal contract, and was made for purpose of carrying into effect unexecuted provisions of such illegal contract.

**9. Contracts ☞140—Contract growing out of illegal contract is tainted with such illegality.**

Contract growing out of and connected with prior illegal contract is tainted with such illegality, and cannot be basis for recovery.

**10. Contracts ☞140—Contract for purpose of carrying out unexecuted provisions of prior illegal contract is void.**

Contract in furtherance of, or for purpose of putting into effect, unexecuted provisions of prior illegal agreement, is illegal and void.

**11. Contracts ☞141(2) — Evidence of illegal agreement, pursuant to which contract sued on had been made, held improperly excluded.**

Evidence of an illegal agreement by corporate directors to keep bonus to be paid for their stock secret, and to secure for defendants a controlling interest in corporation pursuant to which contract sued on for purchase of directors' stock and payment of bonus had been made, *held* improperly excluded.

**12. Courts ☞342—Fraud as equitable right of rescission held permissible defense in law action on contract.**

In action on contract for transfer of corporate stock, defense of fraud and deceit, set up as basis for equitable right of rescission, *held* permissible, under Judicial Code, § 274b (Comp. St. § 1251b), and triable to court aside from main issue.

**13. Contracts ☞138(1) — Equitable rescission of contract held warranted only in event it were found not illegal.**

Where defendants set up illegality of contract sued on and fraud in its procurement as ground for rescission, *held*, though issue of fraud should be determined favorably to them, a rescission on that ground should not be granted, unless it further appeared that contract was not illegal; neither party being entitled to affirmative relief if it were.

**14. Contracts ☞138(1)—Neither party to action on illegal contract is entitled to affirmative relief.**

Where contract sued on is illegal, neither party is entitled to affirmative relief, but case should be dismissed.

In Error to the District Court of the United States for the District of Nebraska; J. W. Woodrough, Judge.

Action by Ed J. Coyle and others against Paul W. Horbach. Judgment for plaintiffs, and defendant brings error. Reversed, with instructions to grant new trial.

H. W. Morrow, of Omaha, Neb. (Lyman O. Perley, of Omaha, Neb., on the brief), for plaintiff in error.

David A. Fitch, of Omaha, Neb., and A. G. C. Bierer, of Guthrie, Okl. (Gurley, Fitch & West, of Omaha, Neb., and Dale & Bierer, of Guthrie, Okl., on the brief), for defendants in error.

Before LEWIS, Circuit Judge, and SYMES and PHILLIPS, District Judges.

PHILLIPS, District Judge. Ed J. Coyle, Harry Jones, M. E. Shreeve, and J. G. Taylor brought this action against Paul W. Horbach upon a written contract to recover the sum of $15,766 and accrued interest. The parties will be referred to as plaintiffs and defendant, respectively, as they appeared in the lower court.

The plaintiffs Coyle, Jones, and Shreeve, and three associates, at the time of the making of the contract sued on, were officers and directors of the Oklamade Oil & Gas Company, an Oklahoma corporation, hereinafter called Oklamade Company. Plaintiff Taylor was manager of the Oklamade Company's refinery. Defendant and eight associates were the officers and directors of the Mid-State Producing & Refining Company, an Oklahoma corporation, hereinafter called Mid-State Company.

On October 18, 1918, defendant and his associates and the plaintiffs executed the contract sued upon.

This contract, after naming the parties and reciting the consideration, in part read as follows:

"That the parties of the first part [defendant and his associates] do hereby sell, transfer and assign unto Harry Jones 5,903 shares of stock in the Mid-State Producing & Refining Company, unto E. J. Coyle 6,825 shares of stock in the Mid-State Producing & Refining Company, and unto J. C. Taylor 150 and M. E. Shreeve 2,888 shares of stock in the Mid-State Producing & Refining Company, and to pay to each of the parties of the second part in addition to such transfer of stock the sum of $1 per share for the respective number of shares so transferred and assigned to each of the parties of the second part.

"The parties of the second part [plaintiffs] in consideration of the above promises and agreement have sold, transferred and assigned unto the parties of the first part 15,766 shares of stock in the Oklamade Oil & Gas Company, which said stock so issued by the Oklamade Oil & Gas Company, a corporation, individually to the

various parties of the first part has been assigned by the respective parties of the first part in blank and in case of fulfillment of this contract as hereinafter provided the parties of the first part or either of them or any person designated by them shall have full power and authority to either cancel such assignment in blank or to fill out such blank assignment as they see fit and necessary.

"The above described stock in the Mid-State Producing & Refining Company is assigned in blank by the parties of the first part and in case of a failure to fulfill this contract as is hereinafter contemplated the parties of the first part or either of them shall have full power and authority to can-cel such assignment and in case of the fulfillment of this contract as hereinafter provided the parties of the second part shall have full power and authority to fill in such blank assignment."

It further provided that the shares of stock above mentioned in each of the two companies should be deposited with the National Bank of Claremore, Claremore, Oklahoma, as escrow agent; that defendant and his associates would on or before December 15, 1918, pay to the bank $5,254, and thereupon the bank would deliver to them 5,254 shares of the Oklamade Company stock; that the defendant and his associates would on or before February 15, 1919, pay to the bank $5,254, and thereupon the bank would deliver to them $5,254 shares of the Oklamade Company stock; and that the defendant and his associates would on or before April 15, 1919, pay to the bank $5,258, and thereupon the bank would deliver to them 5,258 shares of the Oklamade Company stock.

The defendant in his answer set up substantially the following as a defense: That in the fall of 1918 the Mid-State Company was desirous of acquiring the property and assets and particularly the refinery of the Oklamade Company; that the directors of the two companies entered into a verbal contract whereby it was agreed that the total number of shares of stock in the Oklamade Company issued and outstanding was 250,000; that the plaintiffs and their associates would induce the stockholders of the Oklamade Company to transfer 126,000 shares of Oklamade Company stock to defendant and his associates; that in the Oklamade Company stock so to be transferred there should be included 36,032 shares belonging to the plaintiffs and their associates; that the defendant and his associates would pay the plaintiffs and their associates for their shares of stock a bonus of $1 per share; that the plaintiffs and their associates would keep secret from the general stockholders of the Oklamade Company the payment of such bonus and would induce such stockholders to believe that plaintiffs and their associates were exchanging their shares on the same basis as the general stockholders; that the Mid-State Company would issue to such stockholders in lieu of the Oklamade Company stock an equal number of shares of the Mid-State Company stock; that when a majority of the stock in the Oklamade Company had been transferred to defendant and his associates the plaintiffs and their associates would resign, one at a time, as officers and directors of the Oklamade Company, and assist in electing the defendant and his associates as the officers and directors of the Oklamade Company; that thereupon the property and assets of the Oklamade Company should be transferred to the Mid-State Company without further consideration except that the Mid-State Company would assume and pay the debts of the Oklamade Company; that after this general scheme had been agreed upon 5,266 shares of the Oklamade Company's stock belonging to the plaintiffs and their associates were exchanged with the defendant and his associates for an equal number of shares of Mid-State Company stock and defendant and his associates paid plaintiffs and their associates $1 per share for each share of Oklamade Company stock so exchanged, and two written contracts were entered into, one between defendant and his associates and the three associates of plaintiffs, and one between defendant and his associates and the plaintiffs, for the transfer of 30,766 shares of stock belonging to the plaintiffs and their associates to the defendant and his associates and the transfer of an equivalent number of shares of the Mid-State Company stock to the plaintiffs and their associates and the payment to plaintiffs and their associates in addition thereto the sum of $1 per share for each share of stock in the Mid-State Company so to be transferred; that one of the written contracts is the contract here sued upon; and that said written contracts only evidenced a part and parcel of the general scheme and agreement and were entered into for the purpose of carrying out the same.

The answer further alleged false and fraudulent representations upon the part

of the plaintiffs and their associates as an inducement to the contract.

The theory of the defense was threefold: First, that the transfer of the shares of the Oklamade Company to the defendant and his associates violated section 41 of article 9 of the Oklahoma Constitution, and sections 11030, 11025, 11036, Comp. St. Okl. 1921, and therefore the contract sued upon was illegal; second, that the agreement on the part of plaintiffs and their associates to secure the transfer to defendant and his associates of sufficient shares of the Oklamade Company to vest in the latter a controlling interest in the Oklamade Company, to conceal from the general stockholders that the plaintiffs and their associates were receiving for their Oklamade Company stock in addition to the Mid-State Company stock $1 per share bonus, and to resign as officers and directors of the Oklamade Company and elect the officers and directors of the Mid-State Company also the officers and directors of the Oklamade Company, so that the latter might consummate a transfer of the property and assets of the Oklamade Company to the Mid-State Company without consideration, was a fraud agreed to be perpetrated upon the general stockholders, both as against the stockholders who exchanged their stock share for share and those who made no exchange and consequently were left as stockholders in a corporation devoid of assets, and was a violation of the duties they owed as officers and directors of the Oklamade Company to the general stockholders of that company; third, that the contract was induced by false and fraudulent representations.

At the trial the defendant offered to prove these alleged defenses, but upon objection the trial court refused to permit any evidence, except that tending to prove the third defense of false and fraudulent representations, and after the evidence was closed the court held that the latter defense had not been established and directed a verdict.

[1] Counsel for plaintiffs contend that the first alleged defense set up by defendant is not well taken for the reason that under the Constitution and statute law of Oklahoma a merger of the Oklamade Company and the Mid-State Company could lawfully be effected by exchanging the stock of the Mid-State Company for the stock of the Oklamade Company and transferring the property, assets and franchises of the Oklamade Company to the Mid-State Company. They rely upon the case of Collinsville National Bank v. Esau (Okl. Sup.) 176 P. 514. If the verbal agreement alleged in the answer had been made with the full knowledge of the stockholders of the Oklamade Company and all of its stockholders had exchanged their stock for Mid-State Company stock or at least had been given the opportunity to do so, it may be that the transaction would have been lawful, but that is not this case. The plaintiffs and their associates, in consideration of a secret bonus to be paid them, agreed to practice a deception upon the general stockholders of their company, to cause the transfer of a majority of the stock of the Oklamade Company to the defendant and his associates, and to make the latter the officers and directors of the Oklamade Company in order that the property and assets of the Oklamade Company might be transferred to the Mid-State Company without consideration, leaving the stockholders who either refused to exchange their stock or had no opportunity to do so the owners of stock in a corporation wholly without assets.

[2] Counsel for plaintiffs contend that the facts upon which the second defense is predicated can only be shown by proof of a parol contract entered into prior to the written contract sued upon, and that such proof is inadmissible. It is well settled that where the effect of parol evidence, contradicting the consideration expressed in the instrument or showing the true consideration to be different therefrom, would be to change or defeat the legal operation and effect of the instrument or to add new matter to an agreement complete on its face, such evidence is not admissible.

[3] But it is equally well recognized that the foregoing principle does not apply so as to preclude the admission of evidence to show that the consideration was vicious or illegal. If such evidence was not admissible the parties by expressing on the face of the contract a legal consideration could defeat the wise policy of the law which makes void a contract founded on an illegal consideration.

"The rule which forbids the introduction of parol evidence to contradict, add to, or vary, a written instrument does not extend to evidence offered to show that a contract was made in furtherance of objects forbidden by statute, by the common law, or by the general policy of the law." 13 C. J. p. 770, § 966; Farrington v. Stucky et al. (C. C. A. 8) 165 F. 325, 330, 91 C. C. A. 311; Martin v. Clarke et al., 8 R. I. 389, 398, 5 Am. Rep. 586; Friend v. Miller, 52

Kan. 139, 34 P. 397, 39 Am. St. Rep. 340; Roberts v. Arnall, 9 Ga. App. 328, 71 S. E. 590; Muskogee Land Co. v. Mullins (C. C. A. 8) 165 F. 179, 91 C. C. A. 213, 16 Ann. Cas. 387; note, 16 Ann. Cas. 388.

In Muskogee Land Co. v. Mullins, supra, the court said:

"Parol evidence is always competent to show that a written contract, fair and lawful on its face, is in truth contrary to law, morals, or public policy. Lingle v. Snyder, 87 C. C. A. 529, 160 Fed. 627."

[4] A contract which has for its object the perpetration of a fraud on a third person is illegal and void. 13 C. J. 413, §§ 343, 344; Douglas State Bank v. Lewinsohn, 192 Ill. App. 364; Zabel et al. v. New State Tel. Co., 127 Mich. 402, 86 N. W. 949; American Manufacturing Co. et al. v. Crescent Drug Co., 113 Miss. 130, 73 So. 883, L. R. A. 1917D, 482.

[5] Where one party to a contract occupies a confidential relation with a third person and for a secret consideration to be paid by the other party to the contract agrees to use his influence to effect a bargain between such other party and the third person, the contract is illegal as constituting or tending to constitute a fraud on a third person. 13 C. J. p. 415, § 348; Torpey v. Murray et al., 93 Minn. 482, 101 N. W. 609; Simon v. Garlitz, 63 Tex. Civ. App. 172, 133 S. W. 461; Skirvin v. Gardner et al., 36 Okl. 613, 129 P. 729; Thomas v. Caulkett, 57 Mich. 392, 24 N. W. 154, 58 Am. Rep. 369.

[6] Contracts are illegal and invalid which tend to induce officers of corporations to act in disregard of the true interests of the corporation and its other stockholders. 14a C. J. p. 122, § 1891; 13 C. J. p. 418, § 349; Wood v. Manchester Fire Ins. Co., 30 Misc. Rep. 330, 63 N. Y. S. 427; Id., 54 App. Div. 522, 67 N. Y. S. 1150; Lasell v. Hannah, 37 Can. S. C. 324, 26 Can. L. T. Occ. Notes, 384; Cook et al. v. Sherman (C. C.) 20 F. 167; Maine Northwestern Development Co. v. Northern Commercial Co. (D. C.) 213 F. 103; Carlisle v. Smith et al. (D. C.) 234 F. 759. In the last case above cited the president of a corporation agreed for compensation to assist others to gain control of the company by buying in its stock. The court held that the rendition of such services by the officer conflicted with his duties to the shareholders of the corporation and rendered the contract illegal and unenforcible, and this regardless of the purity of his motives and his good faith.

[7] If a contract falls within a general class void as against public policy it matters not that it is free from any taint of fraud or corruption. The law regards the general tendency of such contracts. McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117.

[8] Plaintiffs contend further that though an agreement is incidentally or indirectly connected with an illegal transaction it will be enforced, provided it is supported by an independent consideration and the plaintiff does not require the aid of the illegal transaction to make out his case, and that the contract sued upon falls within the rule. It may be granted that the plaintiffs in this case could make out a prima facie case without disclosing the illegality of the contract. This, however, would not prevent the defendants from proving by parol evidence that the contract sued upon grew out of and was directly connected with a prior illegal contract and was entered into for the purpose of carrying into effect unexecuted provisions of such illegal contract. In discussing this question the learned author of 3 Williston on Contracts, at § 1753, said:

"The test is often suggested, as determining whether the relation of an illegal transaction is sufficiently close to the plaintiff's alleged cause of action to preclude recovery, that if enforcement of the plaintiff's claim does not require aid or proof of the illegal contract or transaction, the plaintiff may recover. As a negative test this seems sound; that is, a plaintiff cannot be allowed to recover if as part of his case he is compelled to allege and prove unlawful acts or agreements, but the converse does not seem equally true. Even though his case can be made out without indicating anything unlawful proof must be admissible to show that the plaintiff is endeavoring to enforce an obligation which is part of, or so closely connected with an unlawful plan, as to make recovery opposed to public policy. The line of proximity will vary somewhat according to the gravity of the evil apprehended.' Parol evidence is always competent to show that a written contract, though lawful on its face, was illegal or part of an illegal transaction; and illegality if serious need not be pleaded or urged to enable the court to act upon it."

In support of this text, Professor Williston cites Lanham v. Meadows, 72 W. Va. 610, 78 S. E. 750, 47 L. R. A. (N. S.) 592; Muskogee Land Co. v. Mullins, 165 F. 179, 91 C. C. A. 213, 16 Ann. Cas. 387; Mc-

Mullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117; Way v. Greer, 196 Mass. 237, 81 N. E. 1002; Zeller v. Leiter, 189 N. Y. 361, 82 N. E. 158.

[9] Where a contract grows immediately out of and is connected with a prior illegal contract, the illegality of such prior contract will enter into the new and render it illegal, and the rule has been broadly stated that if the connection between the original illegal contract can be traced and if the latter is connected with and grows out of the former, no matter how many times and in how many different forms it may be renewed, it cannot form the basis of recovery. 13 C. J. p. 509, § 460; Armstrong v. Toler, 11 Wheat. 258, 6 L. Ed. 468; Tomkins v. Seattle Cons. & Dry Dock Co., 96 Wash. 511, 165 P. 384.

[10] A new agreement, in furtherance of or for the purpose of carrying into effect any unexecuted provisions of a previous illegal agreement is likewise illegal and void. 13 C. J. p. 509, § 460; Blasdel v. Fowle et al., 120 Mass. 447, 21 Am. Rep. 533; In re Canfield (D. C.) 190 F. 266; Id., 193 F. 934, 113 C. C. A. 562; Coulter et al. v. Robertson, 14 Smedes & M. (Miss.) 18, 29; Barton & Woodworth v. Port Jackson & U. F. Plank Road Co., 17 Barb. (N. Y.) 397, 408; Shelton v. Marshall, 16 Tex. 344.

[11] There can be little doubt in this case, if the allegations of defendant's answer are true, that the defendant and his associates would never have purchased the stock of the plaintiffs and their associates in the Oklamade Company and paid therefor an equivalent number of shares of the Mid-State Company stock and a bonus of $1 per share but for the agreement on the part of plaintiffs and their associates to keep the payment of this bonus secret and secure for the Mid-State Company a controlling interest in the Oklamade Company with a view of transferring the Oklamade Company's assets and property to the Mid-State Company without consideration. If the allegations of the answer are true, the written contract was directly connected with the prior illegal agreement and was entered into for the purpose of carrying its unexecuted provisions into effect.

We therefore conclude that the court erred in refusing to admit evidence in support of the second defense.

[12] The fraud set up as a third defense was not for the purpose of recovering damages for fraud and deceit, but as a basis for the equitable right of rescission. The defense was purely equitable in its nature and permissible under section 274b of the Judicial Code, Act of March 3, 1915, 38 Stat. 956 (Comp. St. § 1251b). Since the issue arose in an equitable defense to a law action it was triable by the court. Union Pacific R. Co. v. Syas (C. C. A. 8) 246 F. 561, 158 C. C. A. 531; Fay v. Hill (C. C. A. 8) 249 F. 415, 161 C. C. A. 389; Liberty Oil Co. v. Condon Natl. Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232. In those cases it was held that where equitable defenses are set up in a law action the equitable issues must first be disposed of by the court in the same manner as they would be if the suit were in equity, and if after a determination of such issues there are any material issues left they should then be tried, if the parties desire, to a jury as at common law.

[13, 14] In the deposition of Wiegel there is a letter written by Coyle which the court did not consider on the issue of fraud. In our judgment it presented very substantial proof of the untruth of the alleged representation that the Oklamade Company was operating at a profit. There is also other evidence in the record tending to establish the allegations of fraud. The issues raised by the third defense should be retried by the court in strict accordance with the rule above laid down. However, if the court should find in favor of the defendant on the issue of fraudulent representations it should not decree a rescission on that ground, unless it be further found that the contract is not illegal. The question of the illegality of the contract raised by defendant's answer in his second theory of defense should be determined independently of the question of fraudulent representations, and if the contract is found to be illegal neither plaintiffs nor defendant should be afforded any affirmative relief but the case should be dismissed. 13 C. J. p. 492, § 440.

For the foregoing reasons the judgment of the lower court is reversed with instructions to grant the defendant a new trial, and it is so ordered.