In re CANFIELD.

(Circuit Court of Appeals, Second Circuit.   February 14, 1912.)

No. 134.

1. USURY (§ 115*)—EVIDENCE.
    A debtor and his privies may always plead usury as a defense, though
    they thereby contradict a written instrument.
    [Ed. Note.—For other cases, see Usury, Cent. Dig. § 326; Dec. Dig. §
    115;* Evidence, Cent. Dig. § 2029.]

2. BANKRUPTCY (§ 467*)—RECLAMATION PROCEEDINGS—JURISDICTION.
    The Circuit Court of Appeals will not inquire into the jurisdiction of
    the District Court or the power of a receiver in bankruptcy in reclama-
    tion proceedings instituted by bankrupt's creditor where the receiver
    assented to the proceedings and to the creditor's invitation to the court
    to pass upon his rights.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 467.*]

3. USURY (§ 113*)—BURDEN OF PROOF.
    In reclamation proceedings by a bankrupt's creditor to recover the pro-
    ceeds of accounts assigned to the creditor under an agreement with the
    bankrupt, the burden was on the trustee in bankruptcy to prove usury
    in the contract.
    [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 308–323; Dec.
    Dig. § 113.*]

4. USURY (§ 117*)—EVIDENCE—SUFFICIENCY.
    In proceedings by a bankrupt's creditor to reclaim the proceeds of ac-
    counts assigned by the bankrupt to him, evidence *held* insufficient to show
    usury in the contract for assignment.
    [Ed. Note.—For other cases, see Usury, Dec. Dig. § 117.*]

Appeal from the District Court of the United States for the South-
ern District of New York.

In the matter of Abram L. Canfield, bankrupt.   From an order
confirming a report of the special master and ordering reassignment
of accounts (190 Fed. 266), William H. Burden appeals.   Order re-
versed.

On appeal from an order of the District Court in bankruptcy confirming
a report of the special master and ordering that William H. Burden within
five days reassign . certain accounts to Clarence S. Houghton, receiver in
bankruptcy.

The following agreement was entered into between the bankrupt and Wil-
liam H. Burden, the appellant:

"This agreement, made this 14th day of December, 1910, between Abram
L. Canfield, of the borough of Manhattan, city of New York, party of the
first part, and William H. Burden, of the same place, party of the second
part, witnesseth:

"That in consideration of the premises and the mutual covenants and agree-
ments hereinafter mentioned, and of the sum of one dollar paid by the party
of the second part to the party of the first part at and before the ensealing
and delivery of these presents, the receipt whereof is hereby acknowledged,
the parties hereto have agreed as follows, viz.:

"I.—The party of the first part shall assign and transfer to the party of
the second part approved accounts due from reputable debtors, and the party
of the second part shall pay therefor a sum equal to seventy-five per cent. of
the total amount thereof, not to exceed over ten thousand dollars, unless he
shall elect to advance a larger sum.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"II.—The said accounts shall be for goods sold and delivered in good faith to the respective persons against whom the accounts exist, and in all cases, the said goods shall have been accepted by such persons.

"III.—All accounts assigned under this agreement shall result from the sale of goods shipped either from the place of business of the party of the first part in the city of New York, or from one of the following factories:"

(Here follows a list of 10 companies.)

"IV.—Where the goods shall be shipped from the place of business of the party of the first part, the original shipping receipts covering the shipment referred to in the account shall be submitted to the party of the second part for his inspection at the time of the assignment of the account, and where the goods shall be shipped from one of the factories aforesaid, the invoice sent by the said factory to the party of the first part shall be submitted in like manner.

"V.—The party of the first part shall act as the agent of the party of the second part in collecting the said accounts, but as remittances shall be received therefor, the checks and drafts shall be immediately delivered to the party of the second part, so indorsed as to make them payable to him.

"VI.—The party of the first part hereby guarantees that each account so to be assigned will be paid within ten days after the same shall become due, and if any such account shall not be so paid, the party of the first part shall pay to the party of the second part the full amount thereof, after ten days' notice in writing, and thereupon the party of the second part shall reassign the same to the party of the first part; and if the party of the first part shall fail to so pay the amount of any such unpaid account, the party of the second part, at his election, may revoke the agency of the party of the first part to collect any of said accounts then uncollected.

"VII.—The party of the second part shall be entitled to compensation for the labor and services to be performed, and time to be expended, by him in making the examinations required by the terms of the bond executed by the Fidelity & Casualty Company of New York, and delivered simultaneously herewith, which compensation is to be measured by computing one per cent. per month upon whatever part of the advance shall remain uncollected on the said accounts, and for the period that the same shall remain uncollected.

"VIII.—Until all said accounts shall have been collected or reassigned. the party of the second part shall have the right to examine at all reasonable times, the books of accounts and vouchers of the party of the first part, which examination may be made either personally or by his duly authorized agent.

"IX.—When the amount collected on said accounts and turned over to the party of the second part shall amount to the total sum advanced thereon, with interest at the rate of six per cent. per annum, and the party of the second part shall have received out of said collections his compensation for services as above mentioned, and all disbursements made or liabilities incurred, for exchange, or for attorney's fees, or other expenses, in and about the collection of said accounts, he shall reassign to the party of the first part all accounts then uncollected.

"X.—Until the termination of this contract by mutual consent, all further purchasers of accounts by the party of the second part from the party of the first part shall be subject to the terms hereof."

Canfield paid the premium for the bond conditioned to indemnify Burden against loss arising from the unfaithfulness of Canfield in collecting assigned accounts. The services to be performed by Burden were to require Canfield to deliver a statement of the due date of each assigned account and, if payment were not made within 20 days, to himself make demand upon the debtor for the amount due; to require a responsible employé of Canfield to certify that each account assigned represented a bona fide and actual shipment in pursuance thereof; to make a monthly examination of Canfield's books, accounts and vouchers and a comparison between all unpaid accounts on his own list and such accounts on Canfield's books.

On January 18, 1911, a petition in bankruptcy was filed against Canfield and a receiver appointed. On that date he owed Burden $10,512.72.

The receiver proceeded to collect the accounts assigned to Burden, where-

upon Burden instituted reclamation proceedings in the District Court praying that the receiver might be required to pay over to him the proceeds of the accounts he had collected or might thereafter collect. The receiver filed an affidavit in opposition to the petition and the matter was thereupon referred to the referee as special master.

Testimony was taken, over Burden's objection, as to the negotiations preceding the execution of the agreement of December 14th for the purpose of showing that the parties intended to make a usurious contract. The special master and district judge both held that the agreement was usurious and an order was entered denying the prayer of Burden's petition and directing that Burden reassign to the receiver all the accounts assigned as aforesaid to him by the bankrupt.

Thereupon Burden took this appeal.

John J. Crawford, for appellant.

J. B. Engel (Engel Bros., on the brief), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. [1] The appellant contends that no testimony should have been taken showing that the parties intended to enter into a usurious contract. because the same contradicted the agreement of December 14th actually executed. We think that such testimony was admissible. The purpose of the usury law is to protect borrowers whose distress exposes them to be imposed upon. The debtor is always allowed to make this defense, notwithstanding that he thereby contradicts a written instrument, and so are his privies. Knickerbocker Insurance Co. v. Nelson, 78 N. Y. 137; Wilmarth v. Heine, 137 App. Div. 528, 121 N. Y. Supp. 677; In re Kellogg, 121 Fed. 333, 57 C. C. A. 547; Mudgett v. Goler, 18 Hun (N. Y.) 302; Rohan v. Hansen, 11 Cush. (Mass.) 44; 27 Am. & Eng. Cyc. of Law (2d Ed.) 540; Mercantile Trust Co. v. Gimbernat, 134 App. Div. 410, 119 N. Y. Supp. 103.

[2] We need not inquire into the jurisdiction of the court or the power of the receiver, because Burden instituted the reclamation proceedings and invited the court to pass upon his rights, to which the receiver assented. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 49 L. Ed. 1157.

[3, 4] Upon the merits, though the question of fact is an exceedingly close one, the majority of the court is not persuaded that the receiver (now trustee) has proved his contention, for the following reasons:

First.—The instrument being perfectly valid upon its face, and the taking of usury being a crime, the burden was strongly upon the trustee to prove his contention in that regard.

If the testimony be evenly balanced or doubtful, Burden is entitled to recover.

Second.—The usurious nature of the loan is sworn to by Canfield and one witness and denied by Burden and one witness. As to number and character of the witnesses, there is no preponderance in favor of the trustee.

We think of no valid argument for giving greater credence to Canfield and Herzog than to Burden and Koehler.

Third.—The advertisement in the paper by Burden contemplated just such an arrangement as the written agreement indicates. What he desired was employment and in order to secure it he was willing to lend from ten to twenty thousand dollars at the current rate of interest.

Fourth.—The examination of the books and accounts which Burden agreed to make would take five or six days a month and for it he was entitled to some compensation.

If the holding of the District Court be correct, he was to do this work without any compensation whatever. It is hardly to be credited that Burden would consent to lend his money for the legal rate and do all this clerical work for nothing.

Fifth.—The testimony that Burden volunteered the statement, that the contract of December 14th was intended to avoid the usury laws, to the only person who could take advantage of those laws seems incredible.

Canfield was asked what he said to Burden regarding the clause relating to services to be rendered, and he answered:

"I asked Mr. Burden just what he meant by that clause; why, he said that that was simply to get around the usury law; there were no services to be rendered at all; there were no services rendered."

Of course bankruptcy was not contemplated at that time, at least by Burden. If Canfield did not enforce the usury law Burden had nothing to fear. If the agreement did not bind Canfield, it did not bind anyone and yet Burden, if this testimony be true, made it absolutely useless to accomplish the object for which he says it was signed.

Why should Burden make an agreement to enable him to receive usurious interest and at the same time make it impossible for him to take such interest without placing him absolutely at the mercy of Canfield?

There is no pretense that Burden was non compos mentis at the time, and yet it is difficult to believe that any rational being would have gone to the trouble and expense of having this elaborate agreement prepared for the purpose of avoiding the usury law and at the same time admit to the only man who could interpose the defense of usury that it was a void agreement. So far as the validity of the agreement is concerned, Burden might as well have stamped in red ink on its face the words "void for usury."

We must assume that Burden is a man of ordinary common sense, but in order to find that he made the statement quoted, we must convict him of stupidity which is unique in its originality. It is difficult to imagine that a rational being would procure a safe to protect him from burglary and immediately send the "combination" to the burglar whom he had most reason to dread.

Sixth.—There was nothing extraordinary in the endeavor of Burden to secure a place where he could obtain light work and be paid a reasonable sum therefor, neither is there anything illegal or suspicious in the fact that in order to get such work he was willing to lend $20,000.

Seventh.—We are unable to accept the statement that Burden said that he would not render any services, or even that he contemplated such action. The bond made his rendering these services a condition and it is difficult to believe that he was so unintelligent as not to understand that failure to do what the bond required him to do would destroy an important security which he held against loss.

Eighth.—The fact that Burden did little work is not of especial importance.

We are to test the contract as of the date of its inception and inquire what services he was required to do. If the business had run along for a year and he had complied with the condition he would have made examination of the books and assisted in making collections which would have taken a substantial amount of time and been worth a substantial compensation. The services were little because the failure came before the time of the first monthly "complete examination of books, accounts and vouchers."

The order of the District Court is reversed with costs.