## G. L. MILLER & CO., Inc., v. CLARIDGE MANOR CO.

(District Court, N. D. Alabama. August 4, 1925.)

**1. Usury ⬩53.**

Transaction with underwriter of bond issue, who received discount of 15 per cent. from face value of bonds and other specific allowances, *held* not usurious, under Park's Ann. Civ. Code Ga. § 3436, in view of necessity for resale of bonds.

**2. Usury ⬩113.**

Party alleging that transaction with underwriter of bond issue was usurious by reason of allowance for expenses *held* to have burden of proving that amount was so extravagant as to show bad faith.

In Equity. Mortgage foreclosure suit by G. L. Miller & Co., Inc., trustee, against the Claridge Manor Company. Decree for plaintiff in accordance with opinion.

Anderson, Rountree & Crenshaw and Reuben Arnold, all of Atlanta, Ga., and Nesbit & Sadler, of Birmingham, Ala., for plaintiff.

McClellan, Rice & Stone, of Birmingham, Ala., for defendant.

GRUBB, District Judge. [1] The plaintiff is the trustee under a mortgage executed by and securing a bond issue of the defendant, and seeks a foreclosure of the mortgage, because of a claimed default in the payment of interest, for which the trustee, pursuant to the terms of the mortgage, declared the principal of the mortgage due. The failure to pay the interest is not disputed. The defense is that the loan evidenced by the bonds and secured by the mortgage was usurious, and the entire interest thereby forfeited under the laws of Georgia, which governed the contract. Section 3436, Park's Code of Georgia; Acts Ga. 1916, p. 48.

By the terms of the underwriting agreement between Miller & Co. and the defendant, which was a written one, the defendant agreed to issue and deliver to Miller & Co. its bonds, of the aggregate par value of $565,000, secured by a mortgage on a lot on which was to be erected an apartment house. The purpose of the bond issue was to enable defendant to finance the purchase of the lot and the construction of the building. Miller & Co. was a bond-selling house, specializing in bonds secured by mortgages on office buildings and apartments, and this was known to defendant. Miller & Co. agreed to take over the entire issue of bonds, and to account to the defendant for $480,250 for the entire issue. It was also given the right to expend two specific amounts, one for

printing and legal expenses, and one for architect commissions, out of the proceeds of the bonds, without accounting to the defendant therefor. The guaranteed amount of $480,250, less the two mentioned deductions, was to be paid the defendant, regardless of the amount realized from the resales of the bonds. Payments were to be made as the needs of the building required, regardless of whether the amounts paid had been received by Miller & Co. from the sales of the bonds. Miller & Co. was to have the right to do as it pleased with the bonds, when received by it from defendant, being accountable to defendant only for the stipulated amount. Miller & Co. was the trustee under the mortgage securing the bonds issue, as well as the underwriters of the issue. The stipulated amount was to be deposited by Miller & Co. as needed to complete the building and to be used for that purpose. Miller & Co. had the right to supervise the construction of the building and to do other things essential to the security of the bond issue and for the protection of the bondholders. Miller & Co. were interested in the proper securing of the bonds, both because of being underwriters of the issue and trustee under the mortgage.

It seems clear that defendant could have financed the venture only through a bond-selling house, and only by the distribution of the bonds through resales to numerous purchasers. It evidently could not have placed the bond issue with a single purchaser or lender. It therefore applied for the money to Miller & Co., which had an organization of bond salesmen, and was engaged in selling bonds of like character to small buyers. It was contemplated by Miller & Co. and by the defendant that the needed money was not to be invested by Miller & Co., but was to be secured through them by selling the bonds to many buyers. It was known to the defendant that the bonds could not be realized upon in this way, except at a substantial cost of distribution. If defendant had distributed the bonds singly or in small quantities through bond salesmen, that cost would have been necessarily incurred by it. If it used the organization of Miller & Co. for the distribution of the bonds, defendant would have been saved that cost, but Miller & Co. would have sustained it. The transaction necessarily implied that the defendant was to reimburse Miller & Co. for the expenditure, and the underwriting agreement so provided through the discount and the two special allowances.

The question is whether the allowance of a discount to Miller & Co. of 15 per cent. from the face value of the bonds and of the two mentioned deductions made the transaction a usurious loan. I do not think that it is important to determine whether the transaction evidenced by the underwriting agreement constituted Miller & Co. a selling agent, an underwriter, a lender, or a vendee. The important question is whether the money represented by the discount and the deductions allowed was to compensate Miller & Co. for the use of money furnished by it to defendant, or for services agreed to be performed by it for the benefit of defendant. If the consideration was the use of money, it constituted usury. If the consideration was service in handling and selling the bonds for defendant, and the agreement for service was made in good faith, and was not a cloak to conceal usury, the transaction was not a usurious loan. Cockle v. Flack, 93 U. S. 344, 33 L. Ed. 949; Houghton v. Burden, 228 U. S. 161, 33 S. Ct. 491, 57 L. Ed. 780; In re Canfield, 193 F. 934, 113 C. C. A. 562; Appeal of Hessberg, 200 F. 562, 119 C. C. A. 42. See, also, Merck v. American F. L. M. Co., 79 Ga. 213, 7 S. E. 265, and Hughes v. Griswold, 82 Ga. 299, 9 S. E. 1092. The principle has been held to apply equally to the case of a selling agent or a lender. The ground of the principle is that the discount is not taken for the use of money, but for an agreement to perform service, and that to such an agreement the usury law does not apply, unless it is a cloak for usury.

Applying the principles to the facts of this case: If the transaction was no more than a sale of the entire issue of bonds by the defendant to Miller & Co., and it was not contemplated that Miller & Co. were to resell in small lots at a substantial cost, in order to realize money for the bonds, then, whether Miller & Co. be considered a lender or purchaser, the transaction would be infected with usury. The only consideration for the discount would then have been the use of the money furnished defendant by Miller & Co. On the contrary, both Miller & Co. and the defendant knew that the money agreed to be furnished was to come from the proceeds of resales in small lots of the bond issue, to be effected by Miller & Co.'s organization. Such services were to be rendered for defendant's benefit, since the needed money could be procured only in that way. While the written contract under which Miller & Co. were to handle and distribute the bonds might justify the infer-ence that Miller & Co. acquired the bonds from defendant for a fixed amount, and that defendant had no further interest in their disposition after receiving the amount, yet the situation of the parties, what they desired to accomplish, and the surrounding circumstances indicate that the parties contemplated resales of the bonds by Miller & Co. as a necessary factor in procuring the money agreed to be furnished, and that the services in effecting the resales, looking through form to substance, were for the benefit of defendant, and were of substantial value—not a cloak to cover usury. The bonds had to be resold to finance the building. If Miller & Co. had stood the cost of handling and distributing, it could not have taken over the bonds at their face value, unless it could have resold them at a substantial premium. The bonds bore interest, and this furnished the means of compensating for the use of the money. The discount retained by Miller & Co. was to compensate for the necessary expenditure incurred in handling and distributing the bond issue. It would not constitute usury, unless made with intent to defeat the usury law.

In view of the necessity arising from the nature of the transaction and involved in a redistribution of the bonds, that such services be performed by some one, and the propriety of the defendant, as between it and Miller & Co., paying for them, I do not think that the record shows that the agreement for the discount was a mere evasion of the usury laws. It was to provide compensation for service agreed to be performed by Miller & Co. for defendant and at its request. If the discount be construed to be compensation for services, its amount does not present an issue, unless it is so out of proportion to the value of the services as to show bad faith. No evidence was offered as to any disproportion to the expense agreed to be incurred by Miller & Co. In the case of Houghton v. Burden, supra, the Supreme Court quoted from the case of White v. Benjamin, 138 N. Y. 623, 33 N. E. 1037, these words: "Usury is a crime, and he who alleges it as a defense to an obligation to pay money must establish it by clear and satisfactory evidence."

[2] In reference to the item of allowance for legal expenses, printing, and other expenses allowed Miller & Co., it is enough to say that no evidence has been produced as to the actual or reasonable cost of such services. The burden was on the defendant to show that the amount fixed was so extrav-

agant as to indicate bad faith and a cloak to cover usury.

With relation to the item of allowance for the services or commissions allowed Miller & Co. for an architect, the record contains some evidence as to what was actually done in that respect by Miller & Co.'s architect and the amount of salary paid him. It is, however, not strong enough to sustain the burden the defendant rested under to show bad faith. Houghton v. Burden, supra; In re Canfield, supra; Appeal of Hessberg, supra.

The conclusion reached and expressed entitles the plaintiff to a decree. The matter of an accounting between Miller & Co., as underwriters of the bond issue, and defendant, not being involved in this suit between Miller & Co., as trustee, representing the present bondholders, and the defendant, will not be concluded by the decree rendered. Equity requires, and the decree will provide, that the defendant be entitled to lift the default and reinstate the mortgage, by paying all interest due to date of payment, provided payment be made within 30 days from entry of the decree. If the interest is not so paid, the decree will provide that the principal secured by the mortgage shall be matured for nonpayment of interest; that the mortgage be foreclosed and the mortgaged premises be sold, unless defendant within 30 additional days pay the amount, principal and interest, due thereon, with a deficiency decree for any unpaid balance of the mortgage debt not satisfied from the proceeds of the foreclosure sale in the event there is one.